**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| WILLIAM REID HOUCK<br>VANESSA SANDRA HOUCK,<br><br>     *Plaintiffs*,<br><br>v.<br><br>NEWREZ LLC d/b/a SHELLPOINT<br>MORTGAGE SERVICING,<br><br>     *Defendant*. | Case No. 1:24-cv-01519-MJM |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Dated: June 10, 2024

Respectfully submitted,

*/s/ Melissa O. Martinez*

Melissa O. Martinez (Fed. Bar No. 28975)
Nicholas B. Jordan (Fed. Bar No. 22067)
**MCGUIREWOODS LLP**
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
(410) 659-4400
(410) 659-4482 Fax
mmartinez@mcguirewoods.com
njordan@mcguirewoods.com

***Counsel for Defendant NewRez LLC d/b/a***
***Shellpoint Mortgage Servicing***

## TABLE OF CONTENTS

                                                                            **Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................... 1

FACTUAL ALLEGATIONS ................................................................. 1

    I.    Plaintiffs Fell Behind On Their VA Loan And Sought To Have Buyers Assume Their Loan Obligations. ................................................................. 1

    II.    Plaintiffs Sent Various Complaints And Correspondence Relating To Their VA Loan. ......................................................................................... 3

    III.    Plaintiffs Filed Suit Against Shellpoint, Alleging Violations Of Various Federal And State Statutes. ....................................................................... 7

STANDARD OF REVIEW .................................................................. 8

ARGUMENT ...................................................................................... 9

    I.    The Court Should Dismiss Count I Of The Complaint Because Plaintiffs Fail To Allege An Actionable RESPA Or Regulation X Violation And Suffered No Damages. ................................................................................... 9

        A.    Shellpoint properly responded to RFI #1 and Plaintiffs have no damages relating to RFI #1. ..................................................................... 10

            i.    Shellpoint acknowledged RFI #1 in three days. ....................... 10

            ii.    Shellpoint provided the identity of the current owner of the VA Loan in six days. ....................................................................... 11

            iii.    Shellpoint's alleged failure to provide a payoff statement in seven days did not violate RESPA or Regulation X. .............................. 11

            iv.    Plaintiffs do not, and cannot, allege damages flowing from Shellpoint's purported RESPA violation in connection with RFI #1 ................................................................................................ 12

        B.    Shellpoint properly responded to RFI #2. ................................... 14

        C.    Shellpoint properly responded to NOE #1. .................................. 15

            i.    Plaintiffs' January 30, 2024 correspondence is not a Notice of Error. ........................................................................................ 15

            ii.    Even if Plaintiffs' correspondence constitutes a Notice of Error, Shellpoint complied with its duties to respond. ........................... 17

        D.    Shellpoint's actions did not demonstrate a pattern or practice of noncompliance. ......................................................................... 19

    II.    The Court Should Dismiss Count II Of The Complaint Because Plaintiffs Fail To Allege An Actionable MCPA Violation. ........................................... 20

A.    None of Shellpoint's alleged statements are false, misleading, or deceptive. ................................................................................................................ 20

B.    Plaintiffs did not rely upon, or suffer damages from, the alleged misrepresentations ................................................................................................ 21

CONCLUSION ........................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..................................................................................8

*Bank of Am. v. Jill P. Mitchell Living Tr.*,
    822 F.Supp.2d 505 (D. Md. 2011)...................................................................22

*Bartlett v. Frederick Cty.*,
    246 Fed. App'x. 201 (4th Cir. 2007).................................................................8

*Bennett v. Nationstar Mortg., LLC*,
    No. CV 15-001650KD-C, 2015 WL 5294321 (S.D. Ala. Sept. 8, 2015) ...............................20

*Boomer v. AT & T Corp.*,
    309 F.3d 404 (7th Cir. 2002) .........................................................................10

*Brennan v. Deluxe Corp.*,
    361 F. Supp. 3d 494 (D. Md. 2019) .................................................................2

*Erving v. Ocwen Loan Servicing, LLC*,
    No. 16-CV-62800, 2017 WL 9292207 (S.D. Fla. Jan. 27, 2017)...........................................10

*Fayetteville Investors v. Commercial Builders, Inc.*,
    936 F.2d 1462, 1465 (4th Cir. 1991) ...............................................................8

*Gibbs v. Ocwen Loan Servicing, LLC*,
    No. 1:16-CV-1459-ODE-LTW, 2017 WL 11001709 (N.D. Ga. July 26, 2017)....................16

*Givant v. Vitek Real Estate Industries Group, Inc.*,
    2012 WL 5838934 (E.D. Cal. Nov. 15, 2012).........................................................9

*Hagner v. United States*,
    285 U.S. 427, 430 (1932)..............................................................................10

*Hawkins-El v. First Am. Funding, LLC*,
    891 F. Supp. 2d 402 (E.D.N.Y. 2012) ................................................................17

*Kantz v. Bank of Am., N.A.*,
    No. 3:17-CV-00051, 2018 WL 1948164 (M.D. Tenn. Apr. 25, 2018)...................................13

*Lloyd v. Gen. Motors Corp.*,
    397 Md. 108 (2007) ....................................................................................22

*Lynch v. Wells Fargo Bank, N.A.*,
  No. 18-23560-CIV, 2019 WL 13202780 (S.D. Fla. June 19, 2019)......................................20

*McNeal v. J.P. Morgan Chase Bank, N.A.*,
  No. 16 CV 3115, 2016 WL 6804585 (N.D. Ill. Nov. 17, 2016).......................................10, 11

*Miranda v. Ocwen Loan Servicing, LLC*,
  148 F. Supp. 3d 1349 (S.D. Fla. 2015) ...............................................................9, 12

*Read v. Cenlar FSB*,
  No. EDCV21504JGBSPX, 2021 WL 6618659 (C.D. Cal. Sept. 30, 2021) ...........................12

*Renfroe v. Nationstar Mortg., LLC*,
  822 F.3d 1241 (11th Cir. 2016) ......................................................................12

*Rider v. HSBC Mortg., Corp.*,
  No. 2:12–cv–925, 2013 WL 992510 (S.D. Ohio Mar. 13, 2013) ...........................................13

*Robinson v. Nationstar Mortg. LLC*,
  No. CV TDC-14-3667, 2019 WL 4261696 (D. Md. Sept. 9, 2019)......................................19

*Russell v. Nationstar Mortg., LLC*,
  No. 14-61977-CIV, 2015 WL 5029346 (S.D. Fla. Aug. 26, 2015) ....................................9, 18

*Stewart v. Bierman*,
  859 F. Supp. 2d 754 (D. Md. 2012).................................................................20

*Suarez v. Nationstar Mortg. LLC*,
  No. 23-20114-CIV, 2023 WL 7505266 (S.D. Fla. May 19, 2023)......................................12

*Tanasi v. CitiMortgage, Inc.*,
  257 F. Supp. 3d 232 (D. Conn. 2017)..............................................................9, 12

*Wirtz v. Specialized Loan Servicing, LLC*,
  886 F.3d 713 (8th Cir. 2018) .......................................................................19

**Statutes**

Real Estate Settlement Procedures Act 12 U.S.C. § 2605 ("RESPA") ................................. *passim*

Maryland Consumer Protection Act,
  Md Code, Com. Law §§ 13-101 *et seq.* ("MCPA").......................................................... *passim*

**Other Authorities**

12 C.F.R. § 1024.35 ............................................................................... *passim*

12 C.F.R. § 1024.36 ............................................................................... *passim*

Fed. R. Civ. P. 8(a)(2)...................................................................................................8

Fed. R. Civ. P. 12..................................................................................................1, 8

Fed. R. Evid. 902..................................................................................................10

## INTRODUCTION

After moving across the country, Plaintiffs sought to sell their Maryland property.  They had been in arrears on their mortgage payments since July 2022 and had no way to get caught up.  They tried to sell the property to third parties who would then assume their loan, as allowed by guidelines from the Department of Veterans Affairs.  But loan assumption comes with an important predicate: the loan must be current.  So, Plaintiffs could either sell the property and use the proceeds to bring their loan current or enter into a loan modification to clear the arrearage.  On November 8, 2023, however, Plaintiffs told their mortgage servicer, Shellpoint, that the sale fell through.  So, Shellpoint told Plaintiffs that they could bring their loan current for assumption purposes by doing a loan modification.

Plaintiffs then sent a flurry of letters to Shellpoint and its regulator purporting to obtain information that they already had about their options for loan assumption, as well as various document requests.  Plaintiffs are now suing Shellpoint for purportedly failing to respond to the flurry of letters on time when Shellpoint, in fact, responded to all letters by the schedule set by law.  Plaintiffs also invoke consumer protection laws in claiming that Shellpoint made false statements and material omissions, but they never relied on those statements or omissions, nor did they suffer any damages.  Plaintiffs' claims should be dismissed with prejudice.

## FACTUAL ALLEGATIONS[1]

### I.    Plaintiffs Fell Behind On Their VA Loan And Sought To Have Buyers Assume Their Loan Obligations.

On April 16, 2021, Plaintiffs William "Reid" Houck and Vanessa Houck ("Plaintiffs") purchased the property at 1071 Westfield Drive, Prince Fredrick, MD 20678 (the "Maryland

---

[1] Defendants assume the truth of the factual allegations pled in the Complaint for the purposes of this Motion only.  *See* Fed. R. Civ. P. 12.

Property"), which they financed by a Veterans Affairs ("VA") mortgage loan (the "VA Loan"). ECF 1-2 ¶¶ 1, 22. Mr. and Mrs. Houck are active duty and retired military servicemembers, respectively. *Id.* ¶ 23. In late 2023, Plaintiffs sought to sell the Maryland Property "as Mr. Houck was transferred to California and purchased a property there."[2] *Id.* ¶ 25.

Under VA guidelines, VA loans securing real property may be assumed by the subsequent purchaser of that real property when the loan, seller, and buyer/assumer meet certain conditions. *Id.*; ECF 1-4, 1-5. One of those conditions is that the loan must be contractually current at the time of, or before, the assumption. ECF 1-4 at 3. The VA published Circular 26-23-10 to clarify the assumption procedure for VA loans. *Id.*. It states, "The servicer must also ensure the loan is current or will be made current at or before the close of the assumption. It is permissible for the loan to be brought current through cash at close." *Id.* at 3(a)(2); ECF 1-2 ¶ 27-28.

Due to financial hardship during the pandemic, Plaintiffs fell behind on their VA Loan payments. ECF 1-2 ¶ 25. Plaintiffs' VA Loan was in forbearance from August 2022 to April 2023 and then from September to October 2023. *Id.* Following the forbearance periods, Plaintiffs' VA Loan was past due for the August 1, 2022 through November 1, 2023 installments. *Id.*; ECF 1-8.

On June 1, 2023 and June 15, 2023, Shellpoint by email allegedly "informed the Houcks that it had evaluated the VA Loan for an assumption based on eligibility requirements of Shellpoint and that the Houcks were eligible to continue the assumption qualification process." ECF 1-2 ¶ 26. Plaintiffs hired a realtor and prepared to sell the Property. *Id.* ¶ 26. During September and

---

[2] The allegations in the Complaint suggest that Plaintiffs' California home was purchased *after* Mr. Houck's transfer there, however, public land records indicate that Plaintiffs purchased their California home in 2017, four years before purchasing the Maryland property and taking on the present mortgage. **Exhibit 1**, Grant Deed. "[C]ourts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 503 (D. Md. 2019). The California home's address is what appears on Plaintiffs' November 14, 2023 CFPB Complaint. *See* ECF 1-6.

October 2023, Plaintiffs worked with potential buyers of their Maryland Property, who would then assume their VA Loan after meeting all conditions.  *Id.* ¶ 25.

On November 8, 2023, however, Plaintiffs informed Shellpoint that the sale of the Maryland Property fell through.  ECF 1-8.  Thus, Shellpoint believed that bringing the loan current with sale proceeds was ***not*** an option for Plaintiffs.  *Id.*

## II.    Plaintiffs Sent Various Complaints And Correspondence Relating To Their VA Loan.

On an unspecified date, Plaintiffs allege that Shellpoint "began to unfairly, deceptively, or falsely claim and represent that the Houcks were unable to proceed with the assumption process unless they remitted funds to fully cure any delinquency on the VA Loan prior to the assumption and closing of the sale transaction."  ECF 1-2 ¶ 29.

On November 14, 2023, Plaintiffs submitted a complaint to the Consumer Financial Protection Bureau ("CFPB Complaint #1") stating that Shellpoint had confirmed Plaintiffs were eligible for an assumption but the "assumption process has been difficult," has caused friction between them and buyers, and that they need help getting the process back on track.  ECF 1-6. Plaintiffs did not mention the alleged unfair, deceptive, or false claims vaguely referenced above. *Id.*

On November 17, 2023, nine days after they informed Shellpoint that the sale of the Maryland Property fell through, Plaintiffs emailed a Shellpoint representative, Tzaddi Hunter, inquiring as to the status of the assumption.  ECF 1-7.  The Shellpoint representative replied "I was able to confirm that we cannot approve an assumption without a loan modification.  You can review for an assumption without a modification if you bring the loan current with a full reinstatement."  *Id.*  Plaintiffs allege that this statement was knowingly false since it contradicted previous statements made by Shellpoint and was inconsistent with VA guidelines that the loan can

3

be made current with sale proceeds—an option that they previously told Shellpoint was no longer available.  ECF 1-2 ¶ 34.  Plaintiffs allege that Ms. Hunter's omission that the loan could be brought current with settlement proceeds was "reckless."  *Id.* ¶ 35.

On November 28, 2023, Shellpoint timely responded to CFPB Complaint #1.  ECF 1-8. The response stated:

> As explained by our representatives, the loan would need to be current to be assumed without going through a modification.  Our records indicate you declined the loan modification offer due to the potential rate change.  The second option provided was to bring the loan current with the sale proceeds and then the assumption could be completed; however, on November 8, 2023, you informed us the sale of the home did not go through.

*Id.*  The response then provided a list of documents that were still needed before the assumption application could be reviewed and approved by the VA, and stated "we show no records of you being advised as the loan was approved for an assumption as a complete application is required and it the application is also subject to approval."  The response also noted, "NewRez LLC d/b/a Shellpoint Mortgage Servicing is currently the owner of the account number ending in 1220," and listed its address and contact information.  *Id.*

On November 30, 2023, Plaintiffs' then-counsel emailed Shellpoint seeking a correction to Shellpoint's response to CFPB Complaint #1, namely, that Shellpoint should have requested a VA26-6382 Form, not a VA26-6832 Form, which does not exist.[3]  *See* ECF 1-12 at 65.

Shortly thereafter, on December 8, 2023, Plaintiffs sent Shellpoint the first of three Qualified Written Requests[4]  ("QWR") pursuant to the Real Estate Settlement Procedures Act

---

[3] Plaintiffs also sought clarification on whether Shellpoint needed a *Buyer's* Certificate of Eligibility rather than Seller's Certificate of Eligibility, as requested.  ECF 1-11.  Shellpoint responded that, because the assumption was being reviewed by the VA and not Shellpoint, no additional documents were needed by it at that time.  ECF 1-12 at 65.

[4] A qualified written request is a written correspondence "that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons

("RESPA").  Plaintiffs' first QWR purported to be a Request for Information[5] ("RFI #1") under Regulation X, seeking, among other things, the name, address, and contact information for the current owner or assignee of the loan and a current payoff statement.  ECF 1-9.  Shellpoint received RFI #1 on or before December 12, 2023.  ECF 1-2 ¶ 40.

On December 14, 2023, Shellpoint mailed the requested corrected response to CFPB Complaint #1, apologizing for the typo referencing the wrong VA form and providing the correct one.  ECF 1-12.  The corrected response restated all of the other information in Shellpoint's November 28, 2023 response to CFPB Complaint #1, including the fact that it was the current owner of the VA Loan.  *Id.*

Also on December 14, 2023, Plaintiffs submitted a second CFPB complaint ("CFPB Complaint #2), again claiming that Shellpoint had provided unclear guidance on the loan assumption process, and pointing out the same since-corrected errors in Shellpoint's response to CFPB Complaint #1.  ECF 1-11.  Additionally, CFPB Complaint #2 stated that Plaintiffs were aware that the buyers/assumers have been asked but have not yet provided various documents required for the assumption.  *Id.*

On January 4, 2024, Plaintiffs sent a second QWR styled as a Request for Information[6]

---

for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  *See* 12 U.S.C. § 2605(e)(1)(B) (cleaned up).  For the purposes of this Motion only, Shellpoint assumes as true Plaintiffs' allegations that all of the letters they submitted to Shellpoint constitute QWRs under RESPA.  Shellpoint reserves the right to raise any and all defenses relating to these letters.

[5] The letter purports to be a "Request for information pursuant to 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1)(D) and/or qualified written request pursuant to 12 U.S.C. § 2605(e); request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3) and 15 U.S.C. § 1639g."  ECF 1-9.

[6] The letter purports to be a "Request for information pursuant to 12 C.F.11. § 1024.36 and 12 U.S.C. § 2605(k)(1)(D) and/or qualified written request pursuant to 12 U.S.C. § 2605(e)."  ECF 1-10.

("RFI #2") requesting numerous documents from Shellpoint, including a mortgage loan history, a copy of all servicing notes, the original note, a reinstatement quote, and a copy of all correspondence sent to Plaintiffs.  ECF 1-10.  Shellpoint received RFI #2 on or before January 8, 2024.  ECF 1-2 ¶ 43.

On January 11, 2024, Shellpoint sent a letter responding to CFPB Complaint #2, RFI #1, and RFI #2.  ECF 1-12.  Shellpoint objected to certain requests as overbroad, not related to servicing, and on the basis of privilege and confidentiality, but otherwise provided the information and documents requested, including restating for the third time that Shellpoint was the current owner of the loan.  *Id.*  Shellpoint also stated that it had received documents from the buyer showing that they are financially able to assume the mortgage, and was in the process of submitting those documents to the VA for their decision on the buyers' assumption request.  *Id.*  Shellpoint reiterated, "Due to the loan being past due, Shellpoint's Assumption Department will not be reviewing the loan for an assumption.  As previously explained, once the loan is brought current either by reinstating the loan or by using sale proceeds, the borrower may request to be reviewed for an assumption."  *Id.*

Shellpoint also provided a payoff quote good through January 31, 2024 for $779,929.20, and a reinstatement figure of $73,014.37.  *Id.* at 58.

Shellpoint apologized for any inconvenience, but ultimately concluded "we have been unable to determine that an error occurred after investigating your dispute."  *Id.*

On January 30, 2024, Plaintiffs sent a third QWR styled as a Notice of Error and Request for Information[7] ("NOE #1").  ECF 1-13.  NOE #1 restated that Shellpoint had informed Plaintiffs

---

[7] The letter purports to be a "Notice of errors and/or qualified written request pursuant to 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C § 2605(e) for issuing misrepresentations to borrowers as to the

they would be able to effectuate an assumption of the loan by bringing their loan current at settlement, but then allegedly falsely claimed that Plaintiffs must fully cure any deficiency on the loan prior to the assumption and closing of the sale transaction. *Id.* NOE #1 also requested copies of all servicing notes (which Shellpoint previously objected to providing under the basis of confidentiality) and copies of all recorded communications, communication logs, and written correspondence concerning the assumption process. *Id.* Plaintiffs also requested any documents "prohibiting a borrower from utilizing settlement funds from the closing of a sale to bring such amounts current prior to a loan being assumed." *Id.*

On February 7, 2024, Shellpoint timely responded to NOE #1, once again, identifying itself as the owner and servicer of the loan, and stating, "Shellpoint's records indicate we have previously received the same or a similar correspondence, and we have already responded. Since the correspondence did not provide any new or additional information for us to form the basis for a new investigation, our response remains the same." ECF 1-14.

On March 13, 2024, Plaintiffs emailed Shellpoint to once again inquire as to the status of the assumption. ECF 1-15. On March 18, 2024, Shellpoint allegedly responded that it received information that buyers were not moving forward, the loan was over a year past due, and Plaintiffs did not want to move forward. ECF 1-2 ¶ 58. Plaintiffs allege that this is "completely inaccurate." *Id.* ¶ 59.

### III. Plaintiffs Filed Suit Against Shellpoint, Alleging Violations Of Various Federal And State Statutes.

Plaintiffs filed suit on April 24, 2024 in the Circuit Court for Anne Arundel County, asserting two counts. Count I, under RESPA and its implementing regulations ("Regulation X"),

---

assumption process; request for information and/or qualified written request pursuant to 12 C.F.R. § 1024.36 and U.S.C. 2605(e)." ECF 1-13.

alleges various violations for Shellpoint's purported failure to acknowledge RFI #1 and RFI #2, failing to provide requested information and documents on time, and failing to adequately investigate and respond to NOE #1. Count II is brought under the Maryland Consumer Protection Act ("MCPA") and alleges that Shellpoint made false, misleading, and deceptive statements about the assumption process, on which Plaintiffs relied and suffered damages.

Plaintiffs claim damages in the form of additional interest, fees, and charges, caused by delaying the assumption; legal fees; costs; and expenses; damage to credit; loss of security clearance; incidental financial distress from having to borrow money and max out credit cards; severe emotional distress; and spousal and familial alienation.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), dismissal is proper if the Complaint fails to state a viable claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to survive a motion to dismiss. *Id.* Federal Rule 8(a)(2) imposes a "plausibility standard" which requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940. Although the Court, in considering a motion to dismiss pursuant to Federal Rule 12(b)(6), accepts well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff, "[w]hen there exists a conflict between the complaint's bare allegations and an exhibit attached to the complaint, the exhibit prevails." *See Bartlett v. Frederick Cty.*, 246 Fed. App'x. 201, 205 (4th Cir. 2007) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

8

**ARGUMENT**

I.  **The Court Should Dismiss Count I Of The Complaint Because Plaintiffs Fail To Allege An Actionable RESPA Or Regulation X Violation And Suffered No Damages.**

Under RESPA and Regulation X, a servicer is required to acknowledge receipt of a borrower's QWR within 5 business days. 12 U.S.C. § 2605I(1)(a); 12 C.F.R. § 1024.36(c). A servicer must also respond to a borrower's request to provide the owner or assignee of their loan within 10 days. 12 U.S.C. § 2605(k)(1)(D); 12 C.F.R. § 1024.36(d)(2)(i)(A). And a servicer must correct errors asserted in a QWR asserting an error or state that no error occurred following a reasonable investigation. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1)(i)(B). Damages must flow directly from a servicer's failure to meet these requirements. Accordingly, "costs incurred before the violation occurred, such as the expenses of preparing an initial request for information, cannot serve as the basis for actual damages." *Tanasi v. CitiMortgage*, *Inc*., 257 F. Supp. 3d 232, 271 (D. Conn. 2017); *Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) ("[C]osts incurred while preparing a qualified written request for information from a servicer cannot serve as a basis for damages because, at the time those expenses are incurred, there has been no RESPA violation.") (internal quotations omitted). In addition, "'[c]onclusory and speculative allegations about the effects of failure to respond to a QWR's 'laundry list' of requests for information are insufficient' in the absence of showing 'how the failure to respond to the QWR[] caused any of these things.'" *Russell v. Nationstar Mortg., LLC*, No. 14-61977-CIV, 2015 WL 5029346, at *6 (S.D. Fla. Aug. 26, 2015) (quoting *Givant v. Vitek Real Estate Industries Group, Inc.*, 2012 WL 5838934, at *4-5 (E.D. Cal. Nov. 15, 2012)) (Plaintiff "failed to explain how Everhome's failure to respond to the QWR proximately caused her damages").

In Count One, Plaintiffs allege that Shellpoint violated RESPA and Regulation X's procedural requirements by failing to: (1) acknowledge receipt of RFI #1 and RFI #2 and (2)

provide information and documents requested by RFI #1 within the prescribed time limit. Plaintiffs also allege that Shellpoint violated RESPA and Regulation X's substantive requirements in failing to properly investigate and adequately respond to NOE #1, and that they incurred damages as a result of Shellpoint's violations.[8]  These allegations fail.

### A. Shellpoint properly responded to RFI #1 and Plaintiffs have no damages relating to RFI #1.

Count I should be dismissed as it relates to RFI #1 because Shellpoint properly (1) acknowledged RFI #1, (2) provided the identity of the current owner or assignee of the loan within 10 days, and (3) provided a payoff statement in a timely manner.  In addition, Plaintiffs have no damages flowing from Shellpoint's alleged RFI #1 violations.

#### i. Shellpoint acknowledged RFI #1 in three days.

Plaintiffs sent RFI #1 on December 8, 2023 and claim that Shellpoint received it on or before December 12, 2023, ECF 1-2 ¶ 40, making an acknowledgement due by December 19, 2023.  On December 11, 2023, Shellpoint acknowledged receipt of RFI #1 and responded substantively to RFI #1 via letter sent to Plaintiffs' correct and current California address.  *See* **Exhibit 2**, December 11, 2023 Letter.  *See* Fed. R. Evid. 902; *Boomer v. AT & T Corp.*, 309 F.3d 404, 415 n. 5 (7th Cir. 2002) ("Where a letter is properly addressed and mailed, there is 'a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.'") (quoting *Hagner v. United States*, 285 U.S. 427, 430 (1932)).[9]

---

[8] Plaintiffs do not allege that Shellpoint's responses to RFI #1 and RFI #2 were inadequate or that Shellpoint's response to NOE #1 was untimely.

[9] This Court may consider Shellpoint's December 11, 2023 Letter on a motion to dismiss without converting it into one for summary judgment.  *See Erving v. Ocwen Loan Servicing, LLC*, No. 16-CV-62800, 2017 WL 9292207, at *2 (S.D. Fla. Jan. 27, 2017) (considering Defendant's written acknowledgement letter since "the premise of the claim is that Ocwen did not provide timely written acknowledgment of Plaintiff's request" and dismissing RESPA claim with prejudice); *McNeal v. J.P. Morgan Chase Bank, N.A.*, No. 16 CV 3115, 2016 WL 6804585 at *1 (N.D. Ill.

        ***ii.      Shellpoint provided the identity of the current owner of the VA Loan in six days.***

Not only did Shellpoint acknowledge and respond substantively to RFI #1 on time, but Plaintiffs already had the requested information in their possession when they requested it. The December 11, 2023 Letter provided the information on the current loan owner. It specifically states, "[t]his letter is in response to your recent inquiry regarding the above referenced account serviced by Shellpoint Mortgage Servicing on behalf of ***NewRez LLC d/b/a Shellpoint Mortgage Servicing, the owner of your loan***." **Exhibit 2**, December 11, 2023 Letter (emphasis added).

In addition, Plaintiffs already had this information before they sent RFI #1. On November 28, 2023, Shellpoint responded to CFPB Complaint #1, stating "NewRez LLC d/b/a Shellpoint Mortgage Servicing was the current owner of the account number ending in 1220. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on behalf of the owner referenced above on or about April 28, 2021." ECF 1-8. Then, on December 14, 2023, a mere four business days after Plaintiffs sent RFI #1, Shellpoint mailed a corrected response to CFPB Complaint #1, which restated all of the above information. ECF 1-12 at 61. Shellpoint provided the requested information well within the 10-day window.

        ***iii.     Shellpoint's alleged failure to provide a payoff statement in seven days did not violate RESPA or Regulation X.***

Plaintiffs incorrectly allege that Shellpoint had a duty of care under RESPA and Regulation X to provide an accurate payoff statement for the loan within seven business days of receipt. ECF 1-2 ¶ 72. The Complaint does not cite a RESPA subsection more specific than "12 U.S.C. § 2605"

---

Nov. 17, 2016) (considering two letters in granting a motion to dismiss that were "central to McNeal's claim that the Chase defendants failed to timely respond to her written requests"). Here, this Court should consider Shellpoint's December 11, 2023 Letter because it is central to Plaintiffs' claim that Shellpoint did not timely respond to RFI #1.

for this allegation because RESPA does **not** actually impose any requirement to send a payoff statement.  *See Suarez v. Nationstar Mortg. LLC*, No. 23-20114-CIV, 2023 WL 7505266, at *12 (S.D. Fla. May 19, 2023) (holding the failure to provide an accurate payoff balance does not constitute a violation of RESPA or Regulation X).  Regulation X, likewise, has no specific requirement to provide a timely payoff statement.  Indeed, Regulation X explicitly states that "[a] request for a payoff balance need not be treated by the servicer as a request for information," and thus, it does not trigger the response requirements.  12 C.F.R. § 1024.36(a).  Plaintiffs do not have a viable claim based on their request for a payoff statement.

### iv.    *Plaintiffs do not, and cannot, allege damages flowing from Shellpoint's purported RESPA violation in connection with RFI #1.*

Even if Plaintiffs can establish a RESPA or Regulation X violation, Plaintiffs are required to allege that the violation was the proximate cause of their damages.  "[D]amages are an essential element in pleading a RESPA claim."  *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); *see also Read v. Cenlar FSB*, No. EDCV21504JGBSPX, 2021 WL 6618659, at *7 (C.D. Cal. Sept. 30, 2021) ("Plaintiff alleges that Defendant never acknowledged receipt of Plaintiff's QWR. . . .  However, Plaintiff fails to allege this violation caused his actual damages.").

Here, Plaintiffs' only alleged damages specifically stemming from Shellpoint's failure to comply with the 5-day acknowledgement requirement were "attorneys' fees and costs associated with the **preparation** of the RFIs and NOEs . . . ."  ECF 1-2 ¶ 83 (emphasis added).  But when Plaintiffs sent RFI #1, there was no alleged RESPA violation, and they would have incurred the costs related to sending RFI #1 whether or not it was acknowledged in 5 days.  *See Tanasi*, 257 F. Supp. 3d at 271 (D. Conn. 2017); *Miranda v*, 148 F. Supp. 3d at 1355.

In addition, Plaintiffs do not, and cannot, plausibly allege any damages specifically caused by Shellpoint's alleged failure to provide the identity of the owner or assignee of the loan – information already in their possession – within 10 days.

Plaintiffs also fail to allege any damages stemming from Shellpoint's failure to provide a payoff balance in 7 days. Plaintiffs requested the payoff statement on December 8, 2023. Less than a week later, Plaintiffs submitted CFPB Complaint #2, stating in pertinent part: "We can and will bring the loan current with sale proceeds. The current estimate of total proceeds at settlement is $160,000. Covering forbearance and delinquent payments with nearly $95,000 remaining." This statement establishes that Plaintiffs knew the past due balance and full pay off balance for the VA Loan. As Plaintiffs are aware, the VA Loan had been in default since August 22, 2022, and they were able to calculate that the loan was $65,000 past due at that time.

And in any event, Plaintiffs have repeatedly made it clear that due to their financial hardship, they were unable to pay off the balance of the loan except by using sale proceeds from a potential buyer/assumer. *See* ECF 1-2 ¶ 25; ECF 1-6; ECF 1-11. Shellpoint's purported failure to provide a payoff statement in 7 days did not change this fact or negatively impact Plaintiffs. *See Kantz v. Bank of Am., N.A.*, No. 3:17-CV-00051, 2018 WL 1948164, at *5-6 (M.D. Tenn. Apr. 25, 2018) (holding plaintiff suffered no damages for not promptly receiving payoff statement for his loan in foreclosure when "Plaintiff does not suggest that he had the financial means, at that time, to pay the balance of the loan and/or reverse the foreclosure sale"); *Rider v. HSBC Mortg., Corp.*, No. 2:12–cv–925, 2013 WL 992510, at *6 (S.D. Ohio Mar. 13, 2013) (holding plaintiff failed to adequately plead actual damages under RESPA where she failed to allege she was financially prepared to pay sums necessary to reinstate mortgage had the defendant adequately responded to

13

her request for information).  Accordingly, the Court should dismiss Count I as it relates to RFI #1.

     **B.**     **Shellpoint properly responded to RFI #2.**

     Plaintiffs also allege that Shellpoint failed to acknowledge RFI #2 in the required 5 days. However, Shellpoint was not required to acknowledge RFI #2 because it provided ***all*** of the requested information within the 5-day window instead.

     Shellpoint allegedly received RFI #2 on or before January 8, 2024.  ECF 1-2 ¶ 43.  Instead of mailing an acknowledgment, Shellpoint sent correspondence to Plaintiffs several days later, on January 11, 2024, and provided the requested information and documents as part of an omnibus response to RFI #1, RFI #2, and CFPB Complaint #2.   *Id.* ¶ 49; ECF 1-12.  By providing a complete substantive response in lieu of an acknowledgment, Shellpoint fully complied with RESPA and Regulation X:

> Alternative compliance.  A servicer is not required to comply with paragraphs (c) and (d) of this section [the 5-day acknowledgement requirement] if the servicer provides the borrower with the information requested and contact information, including a telephone number, for further assistance in writing within five days (excluding legal public holidays, Saturdays, and Sundays) of receiving an information request.

12 C.F.R. § 1024.36(c).  Plaintiffs do not allege that Shellpoint's response to RFI #2 was deficient, only that Shellpoint failed to acknowledge RFI #2 pursuant to 12 U.S.C. § 2605(e)(1)(a) and 12 C.F.R. § 1024.36(c).  Indeed, Shellpoint's January 11, 2024 response complied with RESPA's "Alternative compliance" subsection, and a separate acknowledgement letter was not required.  In addition, Plaintiffs suffered no damages caused by Shellpoint's alleged RFI #2 violation.

14

C.    **Shellpoint properly responded to NOE #1.**

On January 30, 2024, Plaintiffs submitted the first purported "Notice of Error,"[10] alleging that Shellpoint did not investigate, correct, or address the complaints raised in it. Plaintiffs' claims fail because (1) their correspondence was not a Notice of Error under RESPA or Regulation X as it failed to identify a servicing error, and (2) regardless, Shellpoint complied with its duties.

                    i.    *Plaintiffs' January 30, 2024 correspondence is not a Notice of Error.*

Regulation X defines "Notice of Error" as "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).[11] A servicer has a duty to investigate, and if necessary, correct the error asserted only when a borrower's inquiry qualifies as a Notice of Error. *Id.*

Here, Plaintiffs' January 30 letter does not assert any error, and to the extent it does, the error asserted relates to a loan assumption, not a servicing error covered by Regulation X. Plaintiffs claim that Shellpoint made contradictory statements relating to the loan assumption

---

[10] Plaintiffs allege that "Shellpoint had duty of care under 12 C.F.R. § 1024.35 to conduct a reasonable investigation of Plaintiffs' ***NOEs*** but failed to do so . . . ." ECF 1-2 ¶ 77 (emphasis added). To the extent Plaintiffs contend there were multiple Notices of Error, neither RFI asserted any error, let alone a servicing error, or used the word "error" at all. Further, those documents were titled "Request for information pursuant to 12 C.F.R. § 1024.36 . . ." which is the provision of Regulation X governing, "Requests for information," while Plaintiffs' January 30, 2024 Notice of Error, submitting by same counsel, references § 1024.35, the provision governing "Error resolution procedures."

[11] Section 1024.35(b) identifies a list of eleven "covered errors" that trigger a servicer's duties to investigate and respond. The first ten on the list of covered errors include failure to accept a payment, failure to credit a payment, imposition of a fee without a reasonable basis for imposing it, among others. The eleventh "covered error" is referred to as the "catch all provision" and covers "any other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11); Plaintiffs concede that the purported error they allegedly identified in their January 30 letter is not among the first ten covered errors, and if anything, falls into the catch all provision. ECF 1-2 ¶¶ 51-52 (citing *id.*).

process.  *See* ECF 1-13.  However, errors related to loan assumption are not servicing-related errors; thus, Shellpoint had no obligation to respond under RESPA or Regulation X.  Instead, loan assumption involves contractual issues between the borrower and the lender and falls outside the scope of mortgage servicing.  In *Gibbs v. Ocwen Loan Servicing, LLC*, for example, the plaintiff sued her servicer for failing to respond to her QWR requesting a status update and various documents concerning her ex-husband's efforts to assume her loan.  No. 1:16-CV-1459-ODE-LTW, 2017 WL 11001709, at *1 (N.D. Ga. July 26, 2017), *report and recommendation adopted,* No. 1:16-CV-1459-0DE-LTW, 2017 WL 11001708 (N.D. Ga. Aug. 23, 2017).  In dismissing plaintiff's RESPA claim, the court explained that inquiries about the assumption process do not relate to loan servicing:

> Plaintiff's various emailed requests for updates on the loan assumption process did not relate to the servicing of the loan as defined by RESPA.  ***The loan assumption process relates to attempts to alter the alleged contractual relationship between Plaintiff and her creditor and not accepting and applying scheduled payments under the terms of the loan***.  Likewise, there is no indication that the transcripts of conversations taking place during 2012 and 2014 Plaintiff requested related to accepting and applying scheduled payments of principal and interest.  Given that Plaintiff had not made any payments since 2008, it is unlikely that transcripts relating to telephone calls concerned loan payments.  Because Plaintiff's various requests did not concern the servicing of her loans as defined by RESPA, the protections under Section 2605(e)(2) are not applicable.

*Id.* at 8 (internal citation omitted) (emphasis added).

Similarly, here, Plaintiffs' January 30 letter does not relate to servicing as defined by RESPA because it requests information and asserts errors related to Shellpoint's alleged representations about the loan assumption process.  It does not relate to "accepting and applying scheduled payments under the terms of the loan."  *Id.*  Likewise, it is doubtful that the recordings of conversations and correspondence requested in NOE #1 pertain to accepting and applying payments since Plaintiffs had not made a payment since July 2022.  Thus, the January 30 Letter is

16

outside the ambit of "servicing" as defined by RESPA and is not a Notice of Error under Regulation X.  Shellpoint had no obligation to investigate the asserted error.

### ii.    *Even if Plaintiffs' correspondence constitutes a Notice of Error, Shellpoint complied with its duties to respond.*

Even if loan assumption is a servicing issue, and Plaintiffs' January 30, 2024 correspondence is a Notice of Error, Shellpoint complied with its investigation and response obligations under RESPA and Regulation X.  Upon a servicer's receipt of a Notice of Error, 12 C.F.R. § 1024.35 requires the servicer to either correct the errors asserted by the borrower, or determine that no error occurred after a reasonable investigation and provide a statement of reasons for that determination.  *Id.* at § 1024.35(e)(1)(i).[12]  However, a servicer is not required to comply with this provision if the servicer determines that "[t]he asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond . . . unless the borrower provides new and material information to support the asserted error."  *Id.* § 1024.35(g)(1)(i); *see, e.g.*, *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 409 (E.D.N.Y. 2012) ("To the extent Plaintiff claims that [defendant] violated the statute because it did not respond to every subsequent letter sent by [defendant], these letters raised essentially the same dispute described in his initial letter.  [Defendant]'s initial response adequately addressed Plaintiff's concerns pursuant to RESPA.  There would have been little, if any, benefit for [defendant] to continue to send the same information following every letter sent by Plaintiff.").

On November 28, 2023, Shellpoint responded to CFPB Complaint #1, stating that Plaintiffs were never told their assumption request was approved and final, and that the loan needed to be

---

[12] RESPA has the same requirements.  *See* 12 U.S.C. § 2605(e)(2).

brought current, which ***could be done with sale proceeds*** had the sale not fallen through.  ECF 1-8.  On January 11, 2024, Shellpoint responded to RFI #1, RFI #2, and CFPB Complaint #2, stating that the VA would be reviewing the assumption "***once the loan is brought current*** either by reinstating the loan or ***by using sale proceeds*** . . ."  ECF 1-12 (emphasis added).  In both responses, Shellpoint stated that no error occurred after investigating Plaintiffs' dispute.

Plaintiffs then sent the January 30, 2024 Notice of Error, once again claiming that Shellpoint misrepresented that the VA Loan could not be brought current using sale proceeds (a claim contradicted by Shellpoint's previous two responses).  ECF 1-13.  NOE #1 asserts the same or substantially the same error as their prior complaints to which Shellpoint had already responded, provided a statement of reasons for its determination, and its contact information.    *See* § 1024.35(e)(1)(i)(B).  Therefore, Shellpoint's brief February 7, 2024 response stating that it has already responded, that no new information was provided, and that no error occurred, satisfied the requirements of RESPA and Regulation X.  ECF 1-14; *Id.* § 1024.35(g)(1)(i); 12 U.S.C. § 2605(e)(2).

Nonetheless, Plaintiffs did not sustain any damages from Shellpoint's alleged failure to substantively respond to NOE #1.  Plaintiffs allege significant credit harm, unwarranted financial and resulting emotional distress, among other damages.  Plaintiffs allege that, had Shellpoint provided them with the information they requested and had it adequately responded to NOE #1, "the Houcks' damages would have been mitigated significantly and they would have been able to sell the residence and satisfy their obligations on the Houck Loan."  ECF 1-2 ¶ 61.  But Plaintiffs do not explain how Shellpoint could have allowed Plaintiffs to mitigate their damages or enable them to sell the Maryland Property when the sale fell through as early as November 8, 2023.  *See Russell*, 2015 WL 5029346, at *6.  Indeed, prior to any alleged misconduct by Shellpoint, Plaintiffs

were already in a precarious financial situation.  As a result of the pandemic, Plaintiffs' income

decreased and their expenses increased.  ECF 1-2 ¶ 25.  The pandemic also required Plaintiffs to

enter two periods of forbearance, and they stopped making payments on the VA Loan on August

2022—more than a year before they sent the first of their flurry of complaints.  *Id.*; ECF 1-10.  In

addition, Shellpoint's response to NOE #1 had no bearing on the speed at which Plaintiffs could

sell their home and the assumption could be completed.  As demonstrated by the correspondence

that Plaintiffs attached to their Complaint, the assumption process had been delayed by the

assumers' failure to send required documentations so that the VA Office (not Shellpoint) could

approve the assumption.  ECF 1-11.

### D.    Shellpoint's actions did not demonstrate a pattern or practice of noncompliance.

Plaintiffs have suffered no damages attributable to Shellpoint's acts or omissions;

therefore, they cannot recover statutory damages for any alleged pattern or practice of

noncompliance with the requirements of RESPA.  *See Robinson v. Nationstar Mortg. LLC*, No.

CV TDC-14-3667, 2019 WL 4261696, at *9 (D. Md. Sept. 9, 2019) (holding a borrower cannot

recover statutory damages without first recovering actual damages).

Even if Plaintiffs could show they suffered actual damages, they do not adequately allege

Shellpoint's pattern or practice of RESPA violations.  "To show a pattern or practice, a plaintiff

must show that noncompliance with the statute was the company's standard operating procedure—

the regular rather than the unusual practice."  *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d

713, 720 (8th Cir. 2018) (internal quotations omitted).  Here, Plaintiffs refer to the over 5,000

consumer complaints against Shellpoint in the CFPB database.  ECF 1-2 ¶ 64.  Plaintiffs attach ten

of those complaints as exhibits which they claim establish that "Shellpoint failed to abided [sic]

by its standard servicer duties . . ."  *Id.* ¶ 65; ECF 1-16.  But "merely recit[ing] outstanding

consumer complaints lodged against Defendant on a myriad of issues, without identifying in any particularity the violations of RESPA or Regulation X at issue" is insufficient. *See Lynch v. Wells Fargo Bank, N.A.*, No. 18-23560-CIV, 2019 WL 13202780, at *17-18 (S.D. Fla. June 19, 2019); *see also Bennett v. Nationstar Mortg., LLC*, No. CV 15-001650KD-C, 2015 WL 5294321 at *12 (S.D. Ala. Sept. 8, 2015) (dismissing statutory damages claim for plaintiff's failure to adequately allege a pattern and practice of noncompliance by citing complaints because "'[c]omplaints' do not equate to 'noncompliance'"). Accordingly, the Court should dismiss Plaintiffs' claims for statutory damages under Count I.

## II.    The Court Should Dismiss Count II Of The Complaint Because Plaintiffs Fail To Allege An Actionable MCPA Violation.

To bring a private action under the MCPA, a plaintiff must allege (1) an unfair or deceptive practice or misrepresentation that (2) they relied upon and (3) caused them actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012). Plaintiffs have not alleged any facts satisfying these elements.

### A.    None of Shellpoint's alleged statements are false, misleading, or deceptive.

Plaintiffs allege that Shellpoint violated the MCPA, Md. Code, Comm. Law ("CL") §§ 13-301(a)(1), 13-301(a)(3), by:

- Falsely claiming that the Houcks were unable to proceed with the assumption process unless they remitted funds to fully cure any delinquency on the Loan prior to the assumption and closing of the sale transaction;
- Falsely claiming that Shellpoint could not approve an assumption without a loan modification;
- Requesting incorrect forms or forms from the incorrect party;
- Otherwise misleading Houck and the purchasers as to the assumption process.

ECF 1-2 ¶ 91. At its essence, Plaintiffs claim that Shellpoint falsely told them they could not do a loan assumption unless the loan was current, which contradicts the referenced VA circular.

But Shellpoint's statements do not contradict the VA guidelines. *See* ECF 1-8; ECF 1-12. Because Plaintiffs were more than a year behind on their VA Loan payments, they had two options to bring it current and proceed with the assumption: (1) use the sale proceeds and (2) do a loan modification. On November 8, 2023, Plaintiffs told Shellpoint that the sale of the Maryland Property would not go through; this means that the possibility of bringing the loan current using sale proceeds was no longer an option for them. ECF 1-8. Consequently, when Shellpoint's representative emailed Plaintiffs directly nine days later on November 17, 2023, she did not reference using sale proceeds to bring the VA Loan current.

In any event, on November 28, 2023, Shellpoint reiterated in its formal response to CFPB Complaint #1 that one of the options to bring the loan current and complete the assumption was to use sale proceeds. ECF 1-6. In the same CFPB response, Shellpoint stated, "***If you are unable to bring the loan current with sale proceeds*** and would like to be review[ed] for an assumption with a loan modification, please contact our Loss Mitigation Department . . . ." *Id.* Shellpoint made it clear that bringing the loan current with sale proceeds was still an option, but based on Plaintiffs' communications, Shellpoint did not believe it was a viable one. ECF 1-8.

Shellpoint's subsequent communications with Plaintiffs were consistent with its initial response and with VA guidelines that using sale proceeds was a permissible method of curing Plaintiffs' loan's delinquency. The January 11, 2024 letter states, "once the loan is brought current either by reinstating the loan ***or by using sale proceeds***, the borrower may request to be reviewed for an assumption." ECF 1-12 (emphasis added). Nothing was misleading or false.

### B.  Plaintiffs did not rely upon, or suffer damages from, the alleged misrepresentations.

"Consumers must prove that they relied on the misrepresentation in question to prevail on a damages action under the MCPA. A consumer relies on a misrepresentation when the

misrepresentation substantially induces the consumer's choice." *Bank of Am. v. Jill P. Mitchell Living Tr.*, 822 F.Supp.2d 505, 532 (D. Md. 2011). Additionally, a plaintiff must demonstrate that he or she "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the [defendant's] misrepresentation." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007).

Here, Plaintiffs do not demonstrate that they relied upon Shellpoint's alleged misrepresentations, let alone suffered damages as a result of that reliance. Plaintiffs responded to each of Shellpoint's allegedly false statements stating that Shellpoint was incorrect. ECF 1-11; ECF 1-13. They did not take any action or change their behavior based on one or more of the allegedly false statements (*e.g.*, Plaintiffs do not allege selling personal property or incurring additional debt in order to have cash to bring the loan current). Plaintiffs were in dire financial straits. *See* ECF 1-2 ¶ 25. Because they now lived in California and their VA Loan was severely delinquent, they decided to hire a real estate agent, put their house on the market, and sell their Maryland Property. Plaintiffs do not allege what they would have done differently had Shellpoint not made allegedly false statements. Plaintiffs have suffered no identifiable loss attributable to their reliance on Shellpoint's alleged misrepresentations. Their MCPA claim should be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.