**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| **WILLIAM REID HOUCK**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,**<br><br>Defendant. | Case No. 1:24-cv-01519-MJM |

**PLAINTIFFS WILLIAM REID HOUCK AND VANESSA SANDRA HOUCK'S RESPONSE IN OPPOSITION TO DEFENDANT NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii

I. FACTUAL BACKGROUND ........ 1

II. LEGAL STANDARD ........ 7

III. ARGUMENT ........ 8

A. PLAINTIFFS SUFFICIENTLY PLEAD THAT SHELLPOINT VIOLATED RESPA AND REGULATION X ........ 8

1. Shellpoint Failed to Timely and Properly Respond to RFI #1, Causing Plaintiffs to Incur Actual Damages. ........ 8

2. Plaintiffs Did Not Receive an Acknowledgment to RFI #2. ........ 13

3. Shellpoint Failed to Timely and Properly Respond to the NOE and RFI #3, Causing Plaintiffs to Incur Actual Damages. ........ 13

4. The Complaint Sufficiently Demonstrates that Shellpoint Engaged in a Pattern or Practice of Non-Compliance. ........ 20

B. PLAINTIFFS SUFFICIENTLY PLEAD THAT SHELLPOINT VIOLATED MARYLAND'S CONSUMER PROTECTION ACT ........ 22

1. Shellpoint Engaged in Unfair, Abusive, or Deceptive Trade Practices. ........ 22

2. Plaintiffs Relied Upon Shellpoint's Conduct and Misrepresentations. ........ 23

IV. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

## Cases

*Althaus v. Cenlar Agency Inc.*, 2017 U.S. Dist. LEXIS 167475, (D. Minn.) .............................. 21
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 8
*Barber v. Kimbrell's*, 577 F.2d 216 (4th Cir. 1978)...................................................................... 12
*Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060 (4th Cir.1984)............................................... 8
*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .......................................................................... 7
*Best v. Newrez LLC*, No. GJH-19-2331, 2020 U.S. Dist. LEXIS 167005, (D. Md. Sep. 11, 2020) ....................................................................................................... 9
Currie v. Wells Fargo Bank, N.A., 950 F. Supp. 2d 788 (D. Md. 2013) ..................................... 24
*Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234 (4th Cir. 2019) .................................. 12
2017 U.S. Dist. LEXIS 223571 (N.D. Ga. Aug. 23, 2017) ......................................................... 16
*Gibbs v. Ocwen Loan Servicing, LLC*, No. 1:16-CV-1459-ODE-LTW, 2017 U.S. Dist. LEXIS 223572 (N.D. Ga. July 26, 2017)......................................................... 16
*Lanton v. Ocwen Loan Servicing, LLC*, 793 F. App'x 398 (6th Cir. 2019)........................... 12, 19
*Lewis v. Money Source, Inc. (In re Lewis)*, 621 B.R. 626 (Bankr. M.D. Pa. 2020) ..................... 22
*Marais v. Chase Home Fin. LLC*, 736 F.3d (6th Cir. 2013)................................................. 10, 11
*Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712(S.D. Ohio 2014).................................... 11
*Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159 (6th Cir. 2015)............................... 20
*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)........................................................ 21
*Martins v. Wells Fargo Bank, N.A.*, No. CCB-16-1070, 2016 U.S. Dist. LEXIS 168071, (D. Md. Dec. 5, 2016)............................................................ 9
*Moore v. Caliber Home Loans, Inc.*, No. 1:14-cv-852, 2015 U.S. Dist. LEXIS 117737, (S.D. Ohio Sep. 3, 2015)........................................................ 20
*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)........................................................ 15
*Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376 (2d Cir. 2022) ......................................... 14
*Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905 (11th Cir. 2016)............................ 14
*Purtle v. Eldridge Auto Sales*, 91 F.3d 797 (6th Cir. 1996)........................................................ 12
*Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241 (11th Cir. 2016).......................................... 20
*Rider v. HSBC Mortg. Corp. (USA)*, No. 2:12-cv-925, 2013 U.S. Dist. LEXIS 34759, (S.D. Ohio Mar. 13, 2013) ....................................................... 12
*Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218 (4th Cir. 2009) ......................... 7, 8
*Swindle v. SN Servicing Corp. (In re Swindle)*, 2023 Bankr. LEXIS 2642 (Bankr. D. Nev. Oct. 20, 2023) ............................................................................ 21
*Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232 (D. Conn. 2017) ......................................... 22

## Other Authorities

12 C.F.R. § 1024.2(b) ................................................................................................................ 15
12 C.F.R. § 1024.35(a)................................................................................................................. 13
12 C.F.R. § 1024.35(b) ........................................................................................................... 14, 16
12 C.F.R. § 1024.36 ................................................................................................................. 17, 21
12 C.F.R. § 1024.36(c)(3)............................................................................................................. 10
12 C.F.R. § 1024.36(e).................................................................................................................. 13

12 C.F.R. § 1024.36(f) .......... 17
12 C.F.R. § 1024.36(f)(1) .......... 9
12 C.F.R. § 1024.36(f)(2) .......... 9, 10
12 C.F.R. § 1024.36(g)(1) .......... 17
12 C.F.R. § 1026.36(c)(3) .......... 10, 12
12 U.S.C. § 2602 (2006) .......... 11, 12
12 U.S.C. § 2605 .......... passim
12 U.S.C. § 2605(k)(1)(C) .......... 14, 17
15 U.S.C. § 1601(a) .......... 12
15 U.S.C. § 1639g .......... 10, 12
15 U.S.C. § 1639g .......... 10, 12
15 U.S.C. § 1640 .......... 12
Fed. R. Civ. P. 8 .......... 21
Maryland Consumer Protection Act ("MCPA"),
Com. Law. § 13-101, *et seq.* .......... 22
VA Servicer Handbook Chapter 5, § 6f .......... 18

## I.    FACTUAL BACKGROUND

Plaintiffs William Reid Houck and Vanessa Sandra Houck ("Plaintiffs") are the owners of the real property and improvements located thereupon located at and commonly known as 1071 Westfield Drive, Prince Fredrick, MD 20678 (the "Property"). (Doc. 1-2, ¶ 1). On or about April 16, 2021, Plaintiffs executed a note in the amount of $743,330 with non-party Intercap Lending, Inc. (the "Note") and a mortgage on the Property purportedly securing the Note (the "Mortgage") (collectively, the "Loan"). (Doc. 1-3).

As a result of the COVID-19 pandemic, Plaintiffs sustained a reduction of income and increased household expenses and entered into forbearance agreements with Shellpoint to forbear their monthly payments under the Loan from August 1, 2022 through April 20, 2023 and then again from September 1, 2023 through October 31, 2023. (Doc. 1-2, ¶ 25). During the latter forbearance periods, Plaintiffs had been working with potential purchasers of the property (the "Purchasers") to assume the Loan pursuant to VA guidelines governing it to relieve themselves of any further obligations as Mr. Houck had been transferred to California and purchased a property there. (Doc. 1-2, ¶ 25). Unlike other types of mortgage loans, one of the common, standard servicing practices related to Veterans Affairs (VA) loans are that VA loans, like the Loan, are assumable by other persons pursuant to the VA guidelines. (Doc. 1-2, ¶ 25).

During the early steps of this process, Plaintiffs' loan servicer, NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), by email on June 1, 2023 and June 15, 2023, informed Plaintiffs that it had evaluated the Loan for an assumption based on the eligibility requirements of Shellpoint and that Plaintiffs were eligible to continue the assumption qualification process. (Doc. 1-2, ¶ 26). Plaintiffs relied upon each of those specific representations

by spending money to prepare to sell the Property, incurring a realtor to sell the property, enter in an agreement to sell the Property with the Loan being assumed. (Doc. 1-2, ¶ 26).

On or about May 22, 2023 the VA issued Circular 26-23-10 which stated: "The servicer must also ensure the loan is current or will be made current at or before the close of the assumption. It is permissible for the loan to be brought current through cash at close." (Doc. 1-4, at 3(a)(2)). This standard servicer guideline which governed the Loan allowed the Plaintiffs to sell the Property and have the Loan assumed by another through the proceeds at the time of settlement. (Doc. 1-2, ¶ 27). Further, the VA Servicer Handbook Chapter 5, § 6f states: "[t]o approve the transfer of ownership: the loan must be current or will be brought current at the closing of the sales transaction." (Doc. 1-5, pp. 23-33). This standard servicer guideline which governed the Loan allowed Plaintiffs to sell the Property and have the Loan assumed by another through the proceeds at the time of settlement. (Doc. 1-2, ¶ 28).

Despite the foregoing standard servicer duties and guidelines governing the Loan, and despite the fact that the forbearance status of the Loan should not have had any effect on the ability of Plaintiffs and the Purchasers to effectuate the assumption of the Loan, Shellpoint began to unfairly, deceptively, or falsely claim and represent that Plaintiffs were unable to proceed with the assumption process unless they remitted funds to fully cure any delinquency on the Loan prior to the assumption and closing of the sale transaction. (Doc. 1-2, ¶ 29). In other words, instead of bringing the loan current upon payment of any arrearage due at settlement of the property and simultaneous assignment of the Loan to a purchaser, Shellpoint altered the actual standard governing the Loan and demanded that Plaintiffs pay that arrearage first before any settlement occurred or could be scheduled. (Doc. 1-2, ¶ 29).

On November 14, 2023, Mr. Houck submitted a complaint to the Consumer Financial Protection Bureau ("CFPB") complaining that he was having difficulties getting Shellpoint to follow through with the assumption pursuant to the standard servicer duties governing the Houck Loan ("CFPB Complaint #1"). (Doc. 1-6).

On November 17, 2023, a Shellpoint representative sent Mr. Houck an email stating that "I was able to confirm that we cannot approve an assumption without a loan modification." (Doc. 1-7). This contradicted what Mr. Houck had previously been told by the VA and Shellpoint and is also contrary to VA Circular 26-23-10 and the VA Servicer Handbook. (Doc. 1-2, ¶ 33; *compare* Doc. 1-4, 1-5 with Doc. 1-7). In the email, Shellpoint further falsely represented that Plaintiffs could be reviewed "for an assumption without a modification if [they] bring the loan current with a full reinstatement." (Doc. 1-7). This statement was knowingly false, since Plaintiffs were permitted under the standard servicer duties and guidelines governing the Loan to sell the Property and bring the loan current at the time of settlement. (Doc. 1-2, ¶ 34; Doc. 1-4, at 3(a)(2), Doc. 1-5, pp. 23-33).

At no point did Shellpoint inform Plaintiffs that the Loan could be assumed without either bringing the Mortgage current or by a loan modification by bringing the Mortgage current with the sales proceeds at sale closing, as stated by the VA. (Doc. 1-2, ¶ 35). Instead, Shellpoint recklessly omitted disclosure of its standard service duty and practice to Plaintiffs as part of Shellpoint's routine conduct with the Plaintiffs and similar borrowers. (Doc. 1-2, ¶ 35). Shellpoint responded to CFPB Complaint #1 by letter dated on November 28, 2023 (the "CFPB Complaint Response"), stating:

> As explained by our representatives, the loan would need to be current to be assumed without going through a modification. Our records indicate you declined the loan modification offer due to the potential rate change. The second option

> provided was to bring the loan current with the sale proceeds and then the assumption could be completed."

(Doc. 1-8). The information in the CFPB Complaint Response regarding bringing the Loan current with sale proceeds was in complete opposition to the information Mr. Houck had previously been provided by Shellpoint. (Doc. 1-2, ¶ 37). In addition, this statement was knowingly false since Plaintiffs were permitted under the standard servicer duties and guidelines governing the Loan to sell the Property and bring the "loan current at the time of settlement through the use of the sale proceeds. (Doc. 1-2, ¶ 37; Doc. 1-4, at 3(a)(2), Doc. 1-5, pp. 23-33).

On or about December 8, 2023, Plaintiffs sent a request for information to Shellpoint ("RFI #1") at its address designated for borrowers to send a request for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). (Doc. 1-9). Through RFI #1, Plaintiffs requested, *inter alia*, that Shellpoint provide loan ownership information, and information concerning the master servicer and current servicer, in addition to requesting a payoff statement. (Doc. 1-9). Shellpoint received RFI #1 at the Designated Address on or before December 12, 2023. (Doc. 1-9). Shellpoint failed to send written notice acknowledging receipt of RFI #1 within five (5) business days of receipt, or by December 19, 2023. (Doc. 1-2, ¶ 44).

Shellpoint failed to provide, as requested in RFI #1, an accurate payoff statement for the Loan within seven (7) business days of receipt, or by December 21, 2023. (Doc. 1-2, ¶ 45). Shellpoint failed to respond to RFI #1's request for information concerning the identity and contact information for the loan's owner and assignee within ten (10) business days of receipt, or by December 27, 2023. (Doc. 1-2, ¶ 46).

On or about January 4, 2024, Plaintiffs sent a second request for information to Shellpoint ("RFI #2") at the Designated Address. (Doc. 1-10). Through RFI #2, Plaintiffs requested that Shellpoint provide information and documents concerning the Loan. (Doc. 1-10). Shellpoint

received RFI #2 at the Designated Address on or before January 8, 2024. (Doc. 1-10). Shellpoint failed to send written notice acknowledging receipt of RFI #2 within five (5) business days of receipt, or by January 16, 2024. (Doc. 1-2, ¶ 44).

On or about December 14, 2023, Mr. Houck submitted a second complaint to the CFPB ("CFPB Complaint #2") complaining that Shellpoint had incorrectly informed him in the CFPB Complaint Response that it needed certain documents from the incorrect party (seller rather than buyer), and that it had further informed him it needed a VA form that did not exist – VA26-6832. (Doc. 1-11). Additionally, CFPB Complaint #2 stated that Mr. Houck was informed by Shellpoint that Plaintiffs could not do a modification for the Loan to then be assumed. (Doc. 1-11). Again, this was in complete opposite of what Mr. Houck was told by November 17, 2023 email and the CFPB Complaint Response. (Doc. 1-2, ¶ 48).

On or about January 11, 2024, Shellpoint respond to RFI #1, RFI #2, and CFPB Complaint #2. (Doc. 1-12). In the response, it admitted that it had in fact made an error and provided an incorrect form number (VA26-6832) in the CFPB Complaint Response and had sent an apology letter dated December 14, 2023 to Plaintiffs' former counsel stating that the correct form is VA26-6382. (Doc. 1-12). The response did not respond to or address in any manner or substantive form, Mr. Houck's complaint that he was receiving conflicting and materially false information about the assumption process and conflict with VA servicing guidelines. (Doc. 1-12).

On or about January 30, 2023, Plaintiffs sent a notice of error (the "NOE") and request for information ("RFI #3") to Shellpoint at the Designated Address. (Doc. 1-13). The NOE stated:

> During the early steps of this process, both the Department of Veterans Affairs (VA) and Shellpoint informed the Borrowers that they would be able to effectuate the assumption of the Loan while in forbearance or delinquent so long as the Borrowers would have sufficient funds upon the closing of the transaction from the proceeds of the transaction to bring the Loan fully current.

> Despite the foregoing, and despite the fact that the forbearance status of the Loan should not have had any effect on the ability of the Borrowers and the Purchasers to effectuate the assumption of the Loan, Shellpoint began to falsely claim that the Borrowers were unable to proceed with the assumption process unless they remitted funds to fully cure any delinquency on the Loan prior to the assumption and closing of the sale transaction.
>
> Moreover, upon information and belief, Shellpoint not only made these misrepresentations to the Borrowers, but also the Purchasers. These misrepresentations have severely and unnecessarily complicated and delayed the assumption of the Loan and caused unnecessary financial hardship and harm to the Borrowers in the form of continued principal and interest payments for which they have become liable and for attorneys' fees to unwind the complications that arose from the unwarranted misrepresentations from Shellpoint.
>
> Shellpoint's actions, in making misrepresentations as to the assumption process for the Borrowers' Loan to both the Borrowers and third parties, including the Purchasers, or in otherwise misleading the Borrowers and Purchasers as to the assumption process constitutes multiple errors in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) and otherwise pursuant to 12 U.S.C. § 2605(e), one (1) such error for each misrepresentation Shellpoint made as to the same.

(Doc. 1-13). Through RFI #3, Plaintiffs requested that Shellpoint provide further information and documents concerning the Loan. (Doc. 1-13). Shellpoint received the NOE at the Designated Address on or before February 2, 2024. (Doc. 1-13).

On or about February 7, 2024, Shellpoint responded but did not in any manner or substance reply to the error raised in the NOE or provide any of the requested information requested by RFI #3 or state that none existed. (Doc. 1-14). As of the filing of this action, Shellpoint had still not addressed or corrected the errors alleged by and through the NOE. (Doc. 1-2, ¶ 56).

On March 13, 2024, Mr. Houck emailed Shellpoint stating that he and the Purchasers had again been provided factually incorrect information by Shellpoint. (Doc. 1-15). Specifically, Mr. Houck stated:

> Tiffany & Assumptions,
>
> I was informed from customer service today that you were in email communication with our buyer/assumer on 03/08/2024 regarding the status of the assumption. I was

> also informed that your office notified the buyer/assumer that we (seller/borrower) had not sent in our TPA granting the buyer/assumer access. Attached below is proof that I sent you the requested/required TPA on 02/23/2024 as a reply to your email to me on 02/22/2024. Why was that TPA not filed?
>
> Furthermore, why are you taking time to respond to the buyer/assumer on 03/08/2024?I have sent your office numerous emails since 02/23/2024 asking for confirmation of receipt and status updates regarding the assumption and have received no reply from your office.
>
> Why will you reply to the assumer but you will not reply to your customer and borrower?
>
> Your actions and inactions only serve to extend my families hardship.
>
> What is the status of the assumption? Do you have all required documents from the assumers? I request/demand a email confirmation from your office regarding the TPA by COB Friday 03/15/2024.

(Doc. 1-15).

On or about March 18, 2024, Shellpoint, rather than respond to Mr. Houck's questions, simply responded that it had received information that the buyers were not moving forward, the loan was over a year past due, and the seller (Plaintiffs) did not want to move forward. (Doc. 1-2, ¶ 58). This is completely inaccurate as Plaintiffs had been attempting to consummate the sale and assumption since at least October of 2023 and never stated that they did not intend to proceed with any sale of the Property and assumption of the Loan. (Doc. 1-2, ¶ 59).

## II. LEGAL STANDARD

The Fourth Circuit has explained, "[t]o survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). In *Twombly* the Court considered whether the plaintiff stated "enough facts to state a

claim to relief that is plausible on its face," *Twombly, 550 U.S.* at 570, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 545. However, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 546. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must also view the factual allegations of the complaint "in the light most favorable to plaintiff." *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1062 (4th Cir.1984).

## III. ARGUMENT

### A. PLAINTIFFS SUFFICIENTLY PLEAD THAT SHELLPOINT VIOLATED RESPA AND REGULATION X

#### 1. Shellpoint Failed to Timely and Properly Respond to RFI #1, Causing Plaintiffs to Incur Actual Damages.

##### a. Plaintiffs Did Not Receive an Acknowledgment to RFI #1.

Shellpoint received RFI #1 on **December 12, 2023**. (Doc. 1-9, p. 5). Plaintiffs allege that they did not receive correspondence acknowledging receipt of to RFI #1 within five (5) business days of receipt, or by December 19, 2023. (Doc. 1-2, ¶ 44).

Shellpoint confusingly claims that it acknowledged receipt of RFI #1 on **December 11, 2023**. (Doc. 9-3, p. 2). Unless Shellpoint invented a time machine, this argument makes no sense.

The existence of this letter shows nothing more than Shellpoint generated the letter at some point. Whether this letter was actually mailed to Plaintiffs requires factual information not plead in the complaint and not provided by Shellpoint through the Motion. As it is Shellpoint's burden on a motion to dismiss to explain why Plaintiffs' claim is not plausible based on the facts asserted in the Complaint, Shellpoint has failed to show that this claim should be dismissed.

Further, Paragraph 15 of Mortgage requires Shellpoint to send all notices to either the Property or to Plaintiffs' notice address. (Doc. 1-3, p. 15). Paragraph 15 informs that there can only be one notice address at a time. (Doc. 1-3, p. 15). RFI #1 contains a written authorization that instructs Shellpoint that Plaintiffs' notice address is their counsel's address. (Doc. 1-9, p. 3). Thus, even if Shellpoint sent acknowledgment to Ramona, CA as claimed, it was not an effective acknowledgment to RFI #1, because Shellpoint was required by the Mortgage to send it to Plaintiffs' notice address and Plaintiffs did not receive the correspondence.

**b.      Shellpoint Failed to Invoke 12 C.F.R. § 1024.36(f)(1).**

12 C.F.R. § 1024.36(f)(2) requires that, if a servicer deems a request for information to be duplicative, it must send correspondence notifying the borrower of the basis for this determination within five business days. *Martins v. Wells Fargo Bank, N.A.*, No. CCB-16-1070, 2016 U.S. Dist. LEXIS 168071, at *24 (D. Md. Dec. 5, 2016) ("Lastly, even if the court were to accept Wells Fargo's contention that some of Martins' requests were duplicative, Wells Fargo did not comply with the procedures for managing duplicative requests."); *Best v. Newrez LLC*, No. GJH-19-2331, 2020 U.S. Dist. LEXIS 167005, at *75-76 (D. Md. Sep. 11, 2020) ("Plaintiff maintains that Defendants never sent such a determination notice and Defendants do not answer this argument in their Reply. The Court will thus decline to dismiss Plaintiff's QWR claims on this basis.").

Again, as it is Shellpoint's burden on a motion to dismiss to explain why Plaintiffs' claim is not plausible based on the facts asserted in the Complaint, Shellpoint has failed to show that this claim should be dismissed. There is no allegation or exhibit attached to the Motion showing that Shellpoint sent correspondence pursuant to 12 C.F.R. § 1024.36(f)(2). As instructed by *Martins* and *Best*, Plaintiffs' claim should not be dismissed.

**c. Failure to Timely Provide an Accurate Payoff Balance Violates 15 U.S.C. § 1639g.**

"A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C. § 1639g; *see also* 12 C.F.R. § 1026.36(c)(3).

Pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), RFI #1 requested an accurate payoff statement from Shellpoint. (Doc. 1-9, p. 2). As pled in the Complaint, "Shellpoint had duty of care under 12 U.S.C. § 2605, 12 C.F.R. § 1024.36(c)(3), and **15 U.S.C. § 1639g** to provide, as requested in RFI #1, an accurate payoff statement for the Loan within seven (7) business days of receipt, which it failed to do." (Doc. 1-2, ¶ 72; *see also* ¶ 45). As such, Shellpoint is on proper notice of a claim for its failure to timely provide an accurate payoff statement. As Shellpoint makes no effort to explain when or how it provided a payoff statement in response to RFI #1, Plaintiffs' claim should not be dismissed.

**d. Plaintiffs Plausibly Alleged Actual Damages Due to Shellpoint's Failure to Respond to RFI #1 and an Entitlement to Statutory Damages.**

In *Marais v. Chase Home Fin. LLC*, 736 F.3d 711 (6th Cir. 2013), the Sixth Circuit ordered the district court to reconsider its determination that the costs that the borrower incurred associated with preparing her qualified written request did not constitute actual damages, because such

determination "did not take into account [her] argument that those costs were for naught due to [the mortgage servicer's] deficient response, i.e., her QWR expenses became actual damages when [the servicer] ignored its statutory duties to adequately respond.". *Id.* at 721. In *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712(S.D. Ohio 2014), the district court followed the instruction of the Sixth Circuit, explaining:

> This Court still recognizes that there is some appeal in the argument that any RESPA violation will have damages built-in if actual damages are construed broadly enough to encompass costs associated with the QWR and suit to enforce RESPA. But, upon reflection, such arguments prove too much. Every civil case, after all, has some damages built-in. Recklessly discharging a gun in the air would satisfy most elements of a tort. But the claim is not complete until the bullet turns Earthward and strikes something — causing damages. Damages are no more built-in to a RESPA suit than they are any tort, or any other cause of action that cannot and will not be brought without damages. That the deleterious consequences of the delict act are prerequisites to the claim, is not a good reason to exclude them as damages.
>
> The Court also recognizes that there is great merit in the general proposition that damages are consequences that flow from the wrongful action and must, therefore, succeed the wrongful act in time. A headache that began hours before a car crash cannot be the result of the crash or considered as damages from it. However, in some cases, a wrongful act can cause damages retroactively. If a fellow pays a painter to paint his house, the payment is a cost. If the painter in fact, paints the house, the cost remains a cost. If the painter does not paint the house and instead, absconds with the money, the cost (though already incurred and paid) transmogrifies into damages.
>
> The term "actual damages" is not defined within RESPA. 12 U.S.C. § 2602 (2006) (definitions do not list "actual damages" or even "damages"). Thus, the Court turns to the common meaning, "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." Black's Law Dictionary (9th ed. 2009). In addition, the Court notes that, "[a]s a remedial statute, RESPA is construed broadly to effectuate its purposes." *Marais*, 736 F.3d at 719 (citing *Carter*, 553 F.3d at 985-86, n.5; *Medrano*, 704 F.3d at 665-66). Hence, with these considerations in mind, and looking at the generous treatment given to damages in *Mellentine*, and *Houston*, as well as by the Sixth Circuit in this case, the Court construes actual damages as encompassing all provable injuries that are the result of Chase' response to receiving the QWR. Or, to put a finer point on it, all expenses, costs, fees, and injuries fairly attributable to Chase's failure to respond appropriately to the QWR, **even if incurred before the failure to respond**, are included.

*Id.* at 727-728 (emphasis added). The Sixth Circuit reaffirmed this line of reasoning in *Lanton v. Ocwen Loan Servicing, LLC*, 793 F. App'x 398, 401 (6th Cir. 2019) ("[T]he cost of preparing a QWR that is inadequately responded to may sometimes constitute actual damages."). Attorneys' fees and costs "transmogrify" into actual damages when a servicer fails to adequately respond to a request for information. Shellpoint failed to timely and properly respond to RFI #1, and an award of damages will repay the actual loss associated with the drafting and mailing of RFI #1.

As to the failure to provide an accurate payoff statement, Shellpoint's argument that Plaintiffs "knew the past due balance" ignores that Plaintiffs made a statement about a "current estimate" and not the "balance." Pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), Shellpoint's duty was to timely provide an accurate "balance," and Shellpoint failed to do so.

More importantly, "[a] plaintiff in a TILA case need not prove that he or she suffered actual monetary damages in order to recover the statutory damages and attorney's fees." *Purtle v. Eldridge Auto Sales*, 91 F.3d 797, 800 (6th Cir. 1996); *Barber v. Kimbrell's*, 577 F.2d 216, 222 (4th Cir. 1978) (noting that 15 U.S.C. § 1640, when enacted, only provided for statutory damages). "The purpose of the statutory recovery is 'to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act.'" *Rider v. HSBC Mortg. Corp. (USA)*, No. 2:12-cv-925, 2013 U.S. Dist. LEXIS 34759, at *20-21 (S.D. Ohio Mar. 13, 2013) (quoting *Purtle*, 91 F.3d at 800. Thus, Plaintiffs are not required to plead actual damages for claims pursuant to 15 U.S.C. § 1639g.

Finally, "[t]he purpose of TILA is 'to assure a meaningful disclosure of credit terms' in order to improve consumer decision making and 'to protect the consumer against inaccurate and unfair' credit practices." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019) (quoting 15 U.S.C. § 1601(a)). Arguing that Plaintiffs "were unable to pay off the balance

of the loan except by using sale proceeds from a potential buyer/assumer" ignores the purpose of TILA as noted by the Fourth Circuit.

**2. Plaintiffs Did Not Receive an Acknowledgment to RFI #2.**

Shellpoint received RFI #2 on January 8, 2024 (Doc. 1-10, p. 6). Plaintiffs allege that they did not receive correspondence acknowledging receipt of RFI #2 within five (5) business days of receipt, or by January 16, 2024. (Doc. 1-2, ¶ 44). Shellpoint responds that its correspondence dated January 11, 2024 was sent in response to RFI #2 and provided the requested information and documents. A review of this correspondence shows that Shellpoint was responding to correspondence received in December 2023, and not January 2024. Further, this correspondence fails to satisfy 12 C.F.R. § 1024.36(e)'s alternative compliance requirements, as the correspondence did not provide all of the information requested by RFI #2. For example, Shellpoint failed to provide servicing notes as requested in paragraph 2 of RFI #2. (Doc. 1-10, p. 2).

**3. Shellpoint Failed to Timely and Properly Respond to the NOE and RFI #3, Causing Plaintiffs to Incur Actual Damages.**

**a. Plaintiffs' NOE Is a Proper Notice of Error.**

A notice of error is "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). The NOE is a valid notice of error because it included Plaintiffs' names, enabled Shellpoint to identify their mortgage loan account, and stated the errors Plaintiffs believe to have occurred. (Doc. 1-13).

12 U.S.C. § 2605(k)(1)(C) prohibits a mortgage servicer from failing to "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." "Section 1024.35 implements section 6(k)(1)(C) of RESPA." 78 Fed. Reg. 10696, 10737. 12 C.F.R. § 1024.35(b) provides ten enumerated "covered errors," including 12 C.F.R. § 1024.35(b)(6) which implements, in part, the requirement to respond to requests to correct errors relating to a final balance for purposes of paying off a mortgage loan and standard servicing duties. 78 Fed. Reg. 10696, 10742. Further, the CFPB included a final catch-all category of errors that broadly covers "any other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11); *Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905, 907 (11th Cir. 2016) ("Account errors are broadly defined by § 1024.35(b), which includes a residual category for '[a]ny other error relating to the servicing of a borrower's mortgage loan.'").

The CFPB created subsection (b)(11) because it believed that "it is necessary and appropriate to achieve the purposes of RESPA to craft error resolution procedures that are sufficiently flexible to adapt to changes in the mortgage market and to encompass the myriad and diverse types of errors that borrowers may encounter with respect to their mortgage loans." 78 Fed. Reg. 10696, 10744.

In *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376 (2d Cir. 2022), the servicer approved the borrower for a trial payment plan and the borrower successfully completed the plan. *Id.* at 379. The servicer refused to implement the promised permanent modification because it lost key documents that it required. *Id.* The contested issue was whether errors committed in handling of loan documents are "covered errors" under the catch-all provision. *Id.* at 382. The district court granted summary judgment, holding that the errors asserted by the borrower were "essentially

challenges to the denial of her loan modification" and such actions "did not relate to the receipt or making of payments" pursuant to the terms of the borrower's loan. *Id.* at 381. The Second Circuit concluded that the district court erred in holding that the borrower's asserted errors were not covered by the catch-all provision. *Id.* at *383. The Second Circuit noted that 12 C.F.R. § 1024.35 does not limit the catch-all provision's application to errors **in** the servicing of a mortgage loan, but instead uses the broad term **relating to**. *Id.* at 383-384; *see Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018) ("[W]hen asked to interpret statutory language including the phrase 'relating to,' ... this Court has typically read the relevant text expansively."); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (holding that the "ordinary meaning" of "relating to" is "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.").

The catch-all, therefore, covers any kind of error that has "a connection with or reference to" the servicing of a loan. *See Morales*, 504 U.S. at 383-384. Servicing a loan involves receiving scheduled periodic payments from a borrower (under the terms of the loan) and making payments to the loan's owner or other third parties (under the terms of mortgage servicing loan documents or servicing contract). 12 C.F.R. § 1024.2(b). Accordingly, a servicer's error is covered by the catch-all if it is connected with or refers to either the servicer's receipt of payments from borrowers or to the servicer's making of payments to owners or other third parties. *See Naimoli*, 22 F.4th at 384.

Plaintiffs' NOE asserted that Shellpoint committed errors by making misrepresentations as to the assumption process for the Loan to both Plaintiffs and third parties, including the Purchasers, or in otherwise misleading Plaintiffs and Purchasers as to the assumption process. (Doc. 1-13). First, this is an error relating to "final balances for purposes of paying off the loan," and expressly

permitted by RESPA and Regulation X. Second, "standard servicer duties are those typically undertaken by servicers in the ordinary course of business." 78 Fed. Reg. 10696, 10739. There is no question that Shellpoint is the only entity responsible for implementing the assumption process and would do so in the ordinary course of business. Third, this error is related to the servicing of the Loan, as Shellpoint's failure to implement the assumption directly impacted its receipt of payments from borrowers and its making of payments to the Loan's owner. (*See* Doc. 1-7, p. 1) ("The buyers have been occupying the property and are due to pay. Can we get this resolved? How is the best way for the buyers to make the mortgage payment?").

Shellpoint's reliance on *Gibbs v. Ocwen Loan Servicing, LLC*, No. 1:16-CV-1459-ODE-LTW, 2017 U.S. Dist. LEXIS 223572 (N.D. Ga. July 26, 2017) is misplaced. The *pro se* plaintiff argued that the servicer "refused to investigate her concerns that the loan modification was fraudulent." *Id.* at *20. Notably, the decision contains no discussion about Regulation X or 12 U.S.C. § 2605(k). The *pro se* plaintiff subsequently failed to object to the report and recommendation of the magistrate. *See Gibbs v. Ocwen Loan Servicing, LLC*, No. 1:16-CV-1459-ODE-LTW, 2017 U.S. Dist. LEXIS 223571 (N.D. Ga. Aug. 23, 2017). Shellpoint cites *Gibbs* for the proposition that "[t]he loan assumption process relates to attempts to alter the alleged contractual relationship between Plaintiff and her creditor and not accepting and applying scheduled payments under the terms of the loan." (Doc. 9-1, p. 22).

Official Interpretation No. 1 to 12 C.F.R. § 1024.35(b) provides examples of errors that are not covered errors, including errors relating to: (1) the origination of a loan; (2) the underwriting of a loan; (3) a subsequent sale or securitization of a loan; (4) a determination to sell, assign, or transfer the servicing of a loan. There is no authority that provides that loan assumptions or other contractual related errors are not covered errors. Such a holding would directly contradict 12

U.S.C. § 2605(k)(1)(C) and 12 C.F.R. § 1024.35(b)(6). *Gibbs* based its holding on outdated case law that wrongfully held that loss mitigation was not related to servicing and that failed to make a distinction between "errors in the servicing" and "errors relating to the servicing" of a mortgage loan. As discussed above, the analysis of the Second Circuit's recent decision in *Naimoli* properly addresses this issue and is therefore more persuasive than *Gibbs*.

Finally, there is no requirement that requests for information relate to the servicing of a loan or require a borrower to be current on the mortgage loan, and this Court should not read either into 12 C.F.R. § 1024.36. The CFPB specifically addressed the first issue in its commentary on 12 C.F.R. § 1024.36(f): "While the final rule does not require that servicers undertake the information request procedures in § 1024.36(c) and (d) for oral submissions, **it does not limit information requests to those related to servicing.**" 78 Fed. Reg. 10696, 10761 (emphasis added). Shellpoint's argument that RFI #3 requested information that did not "pertain to accepting and applying payments" is irrelevant. (*See* Doc. 9-1, p. 22). The second issue is addressed by 12 C.F.R. § 1024.36(g)(1), which directly prohibits requiring a borrower to make any payment before a servicing responds to a request for information.

**b. Shellpoint Failed to Correct the Errors Asserted by the NOE and Shellpoint's Response Shows that Shellpoint Did Not Conduct a Reasonable Investigation.**

On November 17, 2023, a Shellpoint representative sent Mr. Houck an email stating that "I was able to confirm that we cannot approve an assumption without a loan modification." (Doc. 1-7). This contradicted what Mr. Houck had previously been told by the VA and Shellpoint and is also contrary to VA Circular 26-23-10 and the VA Servicer Handbook. (Doc. 1-2, ¶ 33; *compare* Doc. 1-4, 1-5 with Doc. 1-7). In the email, Shellpoint further falsely represented that Plaintiffs could be reviewed "for an assumption without a modification if [they] bring the loan current with a full reinstatement." (Doc. 1-7). The NOE asserted that Shellpoint misrepresented that the

Purchasers could not assume the Loan without Plaintiffs first bringing the Loan current. (Doc. 1-13).

The only two applicable choices a servicer can take after receipt of a notice of error are to correct the errors or perform a reasonable investigation. 12 C.F.R. § 1024.35(e)(1). Shellpoint's response failed to state it corrected the errors asserted through the NOE. (Doc. 1-14). Thus, the relevant issues are whether Plaintiffs state a plausible claim that either Shellpoint wrongfully failed to correct the errors asserted in the NOE or failed to perform a reasonable investigation before sending the response.

As discussed, *supra*, VA loans, like the Loan, are assumable by other persons pursuant to the VA guidelines. (Doc. 1-2, ¶ 25). VA Circular 26-23-10 permits the Loan to be brought current through cash at close. (Doc. 1-4, at 3(a)(2)). The VA Servicer Handbook Chapter 5, § 6f states: "[t]o approve the transfer of ownership: the loan must be current or will be brought current at the closing of the sales transaction." (Doc. 1-5, pp. 23-33). Thus, Plaintiffs plausibly allege that Shellpoint wrongfully concluded that there were no errors in the response.

The response's only justification for determining that no error occurred was reliance on Shellpoint's "previous response dated January 11, 2024," which was enclosed with the February 2024 response. (Doc. 1-14, p. 2). The previous response states that "Shellpoint's Assumption Department will not be reviewing the loan for an assumption. As previously explained, once the loan is brought current either by reinstating the loan or by using sale proceeds, the borrower may request to be reviewed for an assumption." (Doc. 1-14, p. 5). This contradictory statement shows that both responses are not the product of a reasonable investigation. If Shellpoint had reviewed the relevant VA guidelines, it would have discovered that it could correct its errors and allow the Purchasers to assume the loan and the proceeds of the sale of the Property to bring the Loan current.

Shellpoint acknowledged that Plaintiffs and the Purchasers could proceed with the assumption but refused to allow it to happen.

So what is Shellpoint's explanation that justifies its actions? Shellpoint improperly claims that "[o]n November 8, 2023, however, Plaintiffs informed Shellpoint that the sale of the Maryland Property fell through," citing "ECF 1-8." (Doc. 9-1, p. 9). ECF 1-8 is a letter from Shellpoint dated November 28, 2023, not any communication from Plaintiffs. (Doc. 1-8). The letter wrongfully states that "on November 8, 2023, you informed ua [*sic*] the sale of the home did not go through." (Doc. 1-8, p. 1). **Plaintiffs, however, never made this statement**.

Instead, on November 14, 2023, Plaintiffs submitted CFPB Complaint #1 which explained that they were having difficulties getting Shellpoint to follow through with the assumption. (Doc. 1-6). If the sale of the home "fell through," Plaintiffs would not continue to request Shellpoint approve the assumption of the Loan. The Motion conveniently ignores that factual allegations concerning Shellpoint's false representations that the Loan could not be brought current through the proceeds of the sale of the Property.

**c. Shellpoint's Failure to Properly Respond to the NOE Directly and Proximately Caused Plaintiffs to Incur Actual Damages.**

Individual borrowers can recover from a mortgage servicer any actual damages as a result of the failure to comply with RESPA. 12 U.S.C. § 2605(f)(1). As discussed, *supra*, attorneys' fees and costs "transmogrify" into actual damages when a servicer fails to adequately respond to a notice of error or request for information. *Lanton*, 793 F. App'x at 401. Shellpoint failed to properly respond to the NOE and RFI #3, and an award of damages will repay the actual loss associated with the drafting and mailing of the NOE and RFI #3.

Plaintiffs' actual damages are alleged in Paragraphs 60 to 62 of the Complaint. (Doc. 1-2, ¶¶ 60-62). Shellpoint does not contest the nature of these damages, only the causal link between

them and Shellpoint's response to the NOE. (*See* Doc. 9-1, pp. 24-25). Regulation X's error correction mechanism "makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016). Had Shellpoint corrected the errors asserted in the NOE, Plaintiffs would have been allowed to continue with the sale of the Property to the Purchasers. Shellpoint could have allowed Plaintiffs to bring the Loan current with the proceeds of the sale, but repeatedly refused to allow the assumption without Plaintiffs first paying the delinquency. Plaintiffs' financial situation is irrelevant because the VA allowed the delinquency to be cured through the proceeds of the sale of the Property. Shellpoint's argument that the assumption process had been delayed is another red herring, as Shellpoint continues to refuse to allow Plaintiffs to complete the assumption process. (Doc. 1-2, ¶¶ 56-58).

#### 4. The Complaint Sufficiently Demonstrates that Shellpoint Engaged in a Pattern or Practice of Non-Compliance.

A failure to respond properly pursuant to RESPA's obligations can be evidence of "continued prejudicial practices". *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015). Plaintiffs is entitled to $2,000.00 for each of violation of RESPA by Shellpoint. 12 U.S.C. § 2605(f)(1)(B) provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for **each such failure** ... any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."

(emphasis added); *see Moore v. Caliber Home Loans, Inc.*, No. 1:14-cv-852, 2015 U.S. Dist. LEXIS 117737, at *22-23 (S.D. Ohio Sep. 3, 2015) ("[A] company's failure to comply with three provisions of the statute can render them liable for separate damages for each such failure").

At the motion to dismiss stage, "the identities of other borrowers, the dates of the letters, and the specifics of their inquiries is not a prerequisite to pleading statutory damages." *Renfroe*, 822 F.3d at 1247. All that is required of Plaintiffs is an allegation of a pattern or practice of noncompliance with the requirements of RESPA and Regulation X.

Shellpoint's pattern or practice of noncompliance with RESPA and Regulation X is evident in its failure to timely and properly acknowledge receipt of RFI #1, timely and properly respond to RFI #1, timely and properly acknowledge receipt of RFI #2, timely and properly acknowledge receipt of the NOE, and properly respond to the NOE. This attitude shows a "continued prejudicial practices" towards Plaintiffs and that noncompliance with 12 C.F.R. § 1024.35, 12 C.F.R. § 1024.36, and 12 U.S.C. § 2605(k) was Shellpoint's "standard operating procedure". *Martini*, 634 F. App'x at 164; *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

In the instant matter, Plaintiffs allege that Shellpoint has had numerous consumer complaints lodged against it that are cataloged in the CFPB's consumer complaint database. (Doc. 1-2, ¶ 65). Instead of stopping there, Plaintiffs have reviewed ten (10) of the consumer complaints and provided more information on Shellpoint's standard method of operating. Plaintiffs have plausibly shown that Shellpoint has a pattern or practice of noncompliance related to the Loan and with numerous other borrowers. *See Swindle v. SN Servicing Corp. (In re Swindle)*, Nos. 21-50641-nmc, 22-05013-nmc, 2023 Bankr. LEXIS 2642, at *4 (Bankr. D. Nev. Oct. 20, 2023) ("The consumer complaints and associated allegations satisfy the requirements of Fed. R. Civ. P. 8 and 12 and are sufficient to allege a pattern or practice at the complaint stage."); *Althaus v. Cenlar Agency Inc.*, 2017 U.S. Dist. LEXIS 167475, at *11-13 (D. Minn.) (citing website posts of alleged errors sufficient to allege plausible pattern or practice of noncompliance at the pleading stage); *see*

*also Lewis v. Money Source, Inc. (In re Lewis)*, 621 B.R. 626, 633 (Bankr. M.D. Pa. 2020); *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 272 (D. Conn. 2017).

As Plaintiffs have sufficiently alleged an entitlement to statutory damages, the Motion should be denied on this ground.

## B.    PLAINTIFFS SUFFICIENTLY PLEAD THAT SHELLPOINT VIOLATED MARYLAND'S CONSUMER PROTECTION ACT

### 1.    Shellpoint Engaged in Unfair, Abusive, or Deceptive Trade Practices.

The mortgage loan servicing and collection practices described herein by Shellpoint are governed by the Maryland Consumer Protection Act ("MCPA"), Com. Law. § 13-101, *et seq.* Com. Law. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts and further prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by Shellpoint in relation to Plaintiffs. The MCPA defines unfair or deceptive trade practices to include, *inter alia*, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive. Com. Law §§13-301(1) and (3).

Shellpoint's acts and omissions in falsely claiming that Plaintiffs were unable to proceed with the assumption process unless they remitted funds to fully cure any delinquency on the Loan prior to the assumption and closing of the sale transaction, falsely claiming that Shellpoint could not approve an assumption without a loan modification, requesting incorrect forms or forms from

the incorrect party, and otherwise misleading Plaintiffs and the Purchasers as to the assumption process constitutes unfair and deceptive trade practices in violation the MCPA. (Doc. 1-2, ¶ 91).

Again, on November 17, 2023, a Shellpoint representative sent Mr. Houck an email stating that "I was able to confirm that we cannot approve an assumption without a loan modification." (Doc. 1-7). This contradicted what Mr. Houck had previously been told by the VA and Shellpoint and is also contrary to VA Circular 26-23-10 and the VA Servicer Handbook. (Doc. 1-2, ¶ 33; *compare* Doc. 1-4, 1-5 with Doc. 1-7). In the email, Shellpoint further falsely represented that Plaintiffs could be reviewed "for an assumption without a modification if [they] bring the loan current with a full reinstatement." (Doc. 1-7).

Shellpoint's refusal to allow the assumption and misrepresentations relating to the same constitute unfair, abusive, and deceptive trade practices. Through some of the communications between the parties, Shellpoint admitted that Plaintiffs could bring the Loan current through the proceeds, but refused to allow this to happen, despite Plaintiffs' numerous attempts to have Shellpoint approve the assumption. For all times relevant, Plaintiffs were ready and willing to cure the Loan's delinquency with the proceeds of the sale of the Property. Shellpoint is operating on a faulty premise that Plaintiffs communicated that the sale "fell through." Again, Plaintiffs do not plead that they told Shellpoint that the sale would not go through. Shellpoint's reliance on this incorrect statement **made by Shellpoint** is contrary to the factual allegations relating to Plaintiffs' conduct and statements made relating to the assumption. Shellpoint's conduct is nothing short of disingenuous and an attempt to mislead this Court.

### 2.     Plaintiffs Relied Upon Shellpoint's Conduct and Misrepresentations.

"A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." Currie v. Wells Fargo Bank, N.A., 950 F. Supp. 2d 788, 796 (D.

Md. 2013). In *Currie*, the plaintiffs stated that they "repeatedly contact[ed] Wells Fargo and submitt[ed] the information that it requested." *Id.* at 797. The Court held that this was sufficient to plead reliance under the MCPA. *Id.*

As pled in the Complaint, Plaintiffs reasonably relied upon the direct and indirect material acts, actions, and omissions of Shellpoint and further demonstrated by their continued attempted communications with Shellpoint to verify and obtain the correct information, options, and procedures to move forward with the assumption. (Doc. 1-2, ¶ 92). *Currie* is directly on point.

Plaintiffs also alleged that, had Shellpoint not acted unfairly and deceptively, they would not have suffered the damages and losses they assert in Paragraphs 60-62 of the Complaint. (Doc. 1-2, ¶ 93). These damages are directly attributable to Shellpoint's conduct. For example, Plaintiffs are still prohibited from selling the Property and satisfying their obligations on the Loan (Doc. 1-2, ¶ 61), Shellpoint continues to impose and churn fees and additional interests onto the Loan (Doc. 1-2, ¶¶ 61-62(a)), Plaintiffs would not have incurred legal fees and costs to retain an attorney to get the transaction and assumption process back on track during November 2023 until late January 2024 (Doc. 1-2, ¶ 62(b)), Plaintiffs would not have incurred legal fees and costs to submit the requests for information and notices of error (Doc. 1-2, ¶ 62(c)), Plaintiffs would have not been subject to additional credit damages and reputation harm (Doc. 1-2, ¶ 62(d)), Plaintiffs have had to forgo access the proceeds of the sale of the Proper in excess of those required to cure the delinquency and instead borrowed money to pay for living expenses (Doc. 1-2, ¶ 62(e)), Mr. Houck has lost his security clearance (Doc. 1-2, ¶ 62(f)), Plaintiffs maxed out their credit cards (Doc. 1-2, ¶ 62(g)), Plaintiffs have suffered severe emotional distress with physical impact (Doc. 1-2, ¶¶ 62(h, j-n)), and Plaintiffs have incurred damages to their marital relationship (Doc. 1-2, ¶ 62(i)).

Plaintiffs have identified multiple identifiable losses directly attributable to Shellpoint's conduct in violation of the MCPA.

## IV.    CONCLUSION

Plaintiffs have sufficiently pleaded their claims against Shellpoint and the Motion should be denied in its entirety.

**WHEREFORE**, Plaintiffs William Reid Houck and Vanessa Sandra Houck respectfully request that this Court deny Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing's motion to dismiss in its entirety.


Dated: July 8, 2024

*/s/ Daniel M. Solar*
Daniel M. Solar (OH #085632)
DannLaw
15000 Madison Avenue
Lakewood, Ohio 44107
(216) 373-0539
dsolar@dannlaw.com
* *Admitted Pro Hac Vice*

Phillip R. Robinson
Client Protection No. 0006210356
Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
(301) 448-1304
phillip@marylandconsumer.com


*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

This is to certify that true and exact copies of the foregoing have been served upon all parties via the CM/ECF system this 8th day of July, 2024:

*/s/ Daniel M. Solar*
Daniel M. Solar (OH #085632)
DannLaw