**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

WILLIAM REID HOUCK
VANESSA SANDRA HOUCK,

*Plaintiffs*,

v.

NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING,

*Defendant*.

Case No. 1:24-cv-01519-MJM

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint" or "Defendant"), through its undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6), hereby submits this Reply in Support of its Motion to Dismiss Plaintiffs' Complaint, and in support states as follows:

## INTRODUCTION

Plaintiffs continue to press that their long-existing financial woes are attributable to Shellpoint's alleged (1) failure to meet the technical requirements of RESPA and Regulation X and (2) false statements on which Plaintiffs did not even rely. While Shellpoint is sympathetic to the Plaintiffs' financial hardship, Plaintiffs' dire situation began long before Shellpoint's involvement with Plaintiffs' loan assumption. Plaintiffs do not adequately allege any claim for which relief can be granted and do not allege any damages proximately caused by Shellpoint. Accordingly, this Court should dismiss the complaint in its entirety.

# ARGUMENT

## I. THE COURT SHOULD DISMISS PLAINTIFFS' RESPA AND REGULATION X CLAIMS.

### A. The cost of drafting and mailing their various requests and inquiries to Shellpoint do not constitute actual damages.

"[D]amages are an essential element in pleading a RESPA claim." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); *cf. Read v. Cenlar FSB*, No. EDCV21504JGBSPX, 2021 WL 6618659, at *7 (C.D. Cal. Sept. 30, 2021) ("Plaintiff alleges that Defendant never acknowledged receipt of Plaintiff's QWR. . . . However, Plaintiff fails to allege this violation caused his actual damages."). Plaintiffs are required to allege that any alleged RESPA or Regulation X violation was the proximate cause of their damages.

Recognizing that their claimed damages all stem from their own actions, which predate Shellpoint's alleged statutory violations, Plaintiffs double-down on their argument that the costs of drafting, preparing, and mailing of their multiple requests for information ("RFIs") and their purported notice of error ("NOE"), constitute actual damages under RESPA. In support, Plaintiffs cite two Sixth Circuit cases: *Marais v. Chase Home Fin. LLC*, 736 F.3d 711 (6th Cir. 2013), in which the Sixth Circuit remanded for consideration of the argument that costs incurred in preparing a QWR were actual damages when the servicer's response was deficient and therefore "were for naught," and *Lanton v. Ocwen Loan Serv., LLC*, 793 F. App'x 398, 401 (6th Cir. 2019), which stated that the drafting and mailing of a QWR that a servicer inadequately responded to "may sometimes" constitute actual damages. ECF 18 at 12.

Plaintiffs stretch the reasoning of these cases to unrecognizable and unsupported bounds. The proposition that the preparation of QWRs (which by their nature predate any violation) constitute RESPA damages is against the overwhelming weight of authority nationwide, including in this Circuit. *See Akkus v. Rocket Mortg., LLC*, ––– F. Supp. 3d ––––, 2024 WL 473733, at *6

(D. Md. 2024) (citing *Fox v. Statebridge Co.*, 629 F. Supp. 3d 300, 311 (D. Md. 2022)) ("Additionally, courts in the Fourth Circuit have rejected actual damages claims for voluntary postage costs and attorneys' fees associated with sending QWRs and follow-up letters."); *Fox*, 629 F. Supp. 3d at 311 (citing Robinso*n v. Bank of Am., N.A.*, No. 21-cv-110-AJB-DEB, 2022 WL 837073, at *7 (S.D. Cal. Mar. 21, 2022)) ("And courts have similarly rejected voluntary postage costs and attorneys' fees associated with sending follow-up letters.").

Indeed, the majority of cases agree with the law of this District. For example, the Eleventh Circuit has expressly rejected the Sixth Circuit's holdings:

> For similar reasons, we do not find persuasive Baez's reliance on Sixth Circuit precedent, which appears to allow recovery for the initial costs of preparing and sending a request for information where the servicer gives a deficient response. *See Marais v. Chase Home Finance LLC*, 736 F.3d 711, 721 (6th Cir. 2013) ("[T]he district court's determination that costs Marais incurred associated with preparing her [request] did not constitute actual damages did not take into account Marais's argument that those costs were for naught due to Chase's deficient response, i.e., her [request] expenses became actual damages when Chase ignored its statutory duties to adequately respond.") (citation omitted). As explained above, ***the cost of preparing and sending the request, even if it is "for naught," is not causally linked to the deficient response***.

*Baez v. Specialized Loan Serv., LLC*, 709 Fed. App'x. 979, 983 (11th Cir. 2017) (emphasis added) (alterations in original); *see also Tanasi v. CitiMortgage*, *Inc*., 257 F. Supp. 3d 232, 271 (D. Conn. 2017) ("[C]osts incurred before the violation occurred, such as the expenses of preparing an initial request for information, cannot serve as the basis for actual damages."); *Miranda v. Ocwen Loan Serv., LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) ("[C]osts incurred while preparing a qualified written request for information from a servicer cannot serve as a basis for damages because, at the time those expenses are incurred, there has been no RESPA violation."); *Naimoli v. Ocwen Loan Serv., LLC*, 613 F. Supp. 3d 681, 699 (W.D.N.Y. 2020), *rev'd on other grounds Naimoli v. Ocwen Loan Serv., LLC*, 22 F.4th 376 (2d Cir. 2022) ("Plaintiff cannot obtain damages

for the expenses associated with the sending of the RFIs, which then precipitated the alleged RESPA violations."); *Dunkle v. Bank of N.Y. Mellon*, 3:11-cv-1242, 2013 WL 1910310, at *6, (M.D. Tenn. April 16, 2013) (holding the "[c]osts of preparing and sending a QWR" and "the costs of filing suit will not satisfy" RESPA's actual damages requirement"); *cf. Kevelighan v. Trott & Trott, P.C.*, No. 09–12543, 2011 WL 2076336, at *4 (E.D. Mich. May 26, 2011) ("Allowing the costs of filing suit to satisfy the actual damages requirement of § 2605(f) would render the phrase 'as a result of the failure' superfluous, as a borrower would incur such damages simply by filing her action.").

Despite Plaintiffs' attempts to complicate the issue, the reason that costs associated with QWR preparation are not actual damages is very simple: damages must flow directly from a servicer's failure to meet its obligations. Costs that are incurred before the violation cannot possibly "flow" from the violation. "Recovery under RESPA requires more than establishing a violation; a plaintiff must suffer actual, demonstrable damages, and the damages must occur 'as a result of' that specific violation." *Tsakanikas v. JP Morgan Chase Bank N.A.*, No. 2:11-CV-888, 2012 WL 6042836, at *2 (S.D. Ohio Dec. 4, 2012). "Therefore, a plaintiff asserting a RESPA violation must allege actual damages that are causally related to a failure to properly respond to a QWR." *Id.* This Court should reject Plaintiffs' argument that their costs of preparing their letters to Shellpoint are actual damages.

**B. Plaintiffs provided a payoff statement in a timely manner.**

Neither RESPA nor Regulation X have a requirement to provide a payoff statement within a specific time-period. Indeed, Regulation X explicitly states that "[a] request for a payoff balance need not be treated by the servicer as a request for information," and thus, it does not trigger the response requirements. 12 C.F.R. § 1024.36(a).

Plaintiffs now allege that, even if Shellpoint was not in violation of RESPA or Regulation X relating to providing Plaintiffs a payoff statement, Shellpoint was still required to provide a payoff statement in seven days under the Truth in Lending Act ("TILA"). The complaint alleges two Counts: (1) Violations of 12 C.F.R. §§ 1024.35, 1024.36 and 12 U.S.C. §§ 2605(e) and(k); and (2) Violations of Maryland's Consumer Protection Act, Com. Law § 13-101, *et seq*. *See* ECF 1-2. The complaint does not allege a TILA violation. "[A]llegations raised for the first time in response to a motion to dismiss are not properly considered by the court." *Glenn v. Wells Fargo Bank, N.A.*, No. CV DKC 15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016); *AMA Sys., LLC v. 3B Tech, Inc.*, No. 1:21-CV-01472-JRR, 2023 WL 7410854, at *4 (D. Md. Nov. 9, 2023) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991)). This Court should not consider Plaintiffs' new TILA claim set forth in their opposition.

**C. Shellpoint was not required to "acknowledge" RFI #2, and its response to RFI #2 was fully compliant with Regulation X.**

Plaintiffs repeat their unsupported contention that Shellpoint failed to acknowledge RFI #2, and now for the first time in opposing Shellpoint's Motion to Dismiss, allege that Shellpoint's response to RFI #2 was deficient.

First, Shellpoint was not required to meet the five-day acknowledgement requirement for RFI #2, which it received on January 8, 2024, because Shellpoint ***substantively responded*** to RFI #2 on January 11, 2024 instead – well within the five-day period. Regulation X specifically provides for this option. *See* 12 C.F.R. § 1024.36(c) ("Alternative compliance. A servicer is not required to comply with paragraphs (c) and (d) of this section [the 5-day acknowledgement requirement] if the servicer provides the borrower with the information requested and contact information, including a telephone number, for further assistance in writing within five days

(excluding legal public holidays, Saturdays, and Sundays) of receiving an information request."). Plaintiffs do not allege that they did not receive Shellpoint's substantive January 11, 2024 response within 5 days, nor does the Complaint allege that the response lacked any of the necessary information required to satisfy 12 C.F.R. § 1024.36(c)'s "alternative compliance" provision.

Second, Plaintiffs, now for the first time in their opposition to Shellpoint's Motion to Dismiss, allege that Shellpoint's January 11, 2024 response was substantively deficient. ECF 18 at 13. This Court should not consider Plaintiffs' new allegations set forth in their opposition. *See supra* Section I.B. Should the Court consider Plaintiffs' new allegations, however, those allegations are meritless. Plaintiffs now argue that Shellpoint's January 11, 2024 response cannot be responsive to RFI #2 because the response states that it is in reference to Plaintiffs' December 2023 correspondence. ECF 18 at 13. This argument is a red herring. It is clear from reading Shellpoint's actual January 11, 2024 response that it is directly responsive to Plaintiffs' January 2024 RFI #2. For example, RFI #2 requested, for the first time, a mortgage transaction history for the life of the loan. ECF 1-10. Shellpoint enclosed a copy of the loan history statement from April 28, 2021 to the present, explaining that that is the date on which the loan was service transferred to Shellpoint. ECF 1-12. RFI #2 requested, for the first time, a true and accurate copy of the original note related to the loan. ECF 1-10. Shellpoint provided said copy and additionally noted it is not required to provide original wet ink documents. ECF 1-12.

The only specific deficiency alleged by Plaintiffs in their Opposition to Shellpoint's Motion to Dismiss is that Shellpoint's January 11, 2024 response did not provide servicing notes. ECF 18 at 13. Shellpoint responded that it was not required to provide documents that constitute confidential, proprietary, or privileged information, and stated it would not be providing servicing notes unless subpoenaed for a court case. ECF 1-12. "RESPA requires a loan servicer to provide

'information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the server.' The statute, however, does not require a lender to provide documents that it relied upon to answer a request for information when those documents constitute confidential, proprietary, or privileged information." *Dawoudi on behalf of Plaintiff v. Nationstar Mortg., LLC*, 448 F. Supp. 3d 918, 927 (N.D. Ill. 2020) (citing 12 U.S.C. § 2605(e)(2)(C); 12 C.F.R. § 1024.35(e)(4)). In addition, Shellpoint's response undercuts Plaintiffs' allegation that Shellpoint's letter was not sent in response to RFI #2 since RFI #2 clearly requested servicing notes. The Court should reject Plaintiffs' new and meritless arguments.

**D. Shellpoint was not required to respond to Plaintiffs' Notice of Error, but did so anyway and responded in full compliance with Regulation X.**

***i. Plaintiffs' NOE did not allege servicing related errors.***

Shellpoint only has an obligation to respond to a Notice of Error (or QWR that asserts an error) if it asserts a ***servicing*** related error. *See Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015). Plaintiffs do not dispute that their January 30, 2024 NOE to Shellpoint asserts alleged errors related to the loan assumption process. *See* ECF 1-13.

As a threshold matter, Section 1024.35(b) identifies a list of eleven "covered errors" that trigger a servicer's duties to investigate and respond. 12 C.F.R. § 1024.35(b). The first ten on the list of covered errors include failure to accept a payment, failure to credit a payment, imposition of a fee without a reasonable basis for imposing it, among others. *Id.* The eleventh "covered error" is the "catch all provision" and covers "any other error relating to the servicing of a borrower's mortgage loan." Plaintiffs' complaint and NOE allege a violation of 12 C.F.R. § 1024.35(b)(11), the catch-all provision, thus conceding that the alleged assumption related error is not among the first ten covered errors identified in § 1024.35(b). ECF 1-2 ¶¶ 51-52. Now Plaintiffs, for the first time, assert that the alleged errors also implicate § 1024.35(b)(6)'s "requirement to respond to

requests to correct errors relating to a final balance for purposes of paying off a mortgage loan." ECF 18 at 14. For the same reasons as stated above, this Court should reject Plaintiffs' attempt to amend their complaint by way of their response to Shellpoint's Motion to Dismiss. *Glenn v. Wells Fargo Bank, N.A.*, No. CV DKC 15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991).

There is only one case that has been identified by either side relating to whether a loan assumption is a servicing related error implicating RESPA and Regulation X, and that case undermines Plaintiffs' contentions. The court in *Gibbs v. Ocwen Loan Serv., LLC* was explicit that the plaintiff's requests and inquiries to the mortgage servicer regarding updates on the loan assumption process "***did not relate to the servicing of the loan as defined by RESPA***. The loan assumption process relates to attempts to alter the alleged contractual relationship between Plaintiff and her creditor and not accepting and applying scheduled payments under the terms of the loan." No. 1:16-CV-1459-ODE-LTW, 2017 WL 11001709, at *1 (N.D. Ga. July 26, 2017), *report and recommendation adopted,* No. 1:16-CV-1459-0DE-LTW, 2017 WL 11001708 (N.D. Ga. Aug. 23, 2017) (emphasis added).

In an attempt to escape the inevitable conclusion that a loan assumption is not related to servicing and thus, cannot trigger the response requirements of RESPA and Regulation X, Plaintiffs argue that *Gibbs* is based on "outdated case law that wrongfully held that loss mitigation was not related to servicing. . . ." ECF 18 at 17. For their argument, Plaintiffs rely on the Second Circuit's *Naimoli v. Ocwen Loan Serv., LLC*, 22 F.4th 376, 383 (2d Cir. 2022), which concluded that the district court erred in holding that the borrower's asserted errors that related to their loan modification were not servicing related errors covered by the catch-all provision of Regulation X. In doing so, Plaintiffs ignore that Fourth Circuit decision in *Morgan v. Caliber Home Loans, Inc.*,

26 F.4th 643 (4th Cir. 2022), decided one month later, binding on this Court, and holding the exact opposite:

> Although we have not directly addressed the issue of whether a modification, or potential modification, of a contract constitutes servicing protected by RESPA, we have previously found the Ninth Circuit's treatment of the issue in *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661 (9th Cir. 2012), to be instructive. In *Medrano*, the Ninth Circuit concluded RESPA "distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other." 704 F.3d at 667. Consequently, the Ninth Circuit held that "challenges to the terms of the loan and mortgage documents" are not disputes regarding servicing under RESPA. *Id*. Similarly, in *Poindexter v. Mercedes-Benz Credit Corp.*, we emphasized that "servicing" is limited to "the receiving or making of loan payments" and is not related to "the terms of the loan and mortgage documents." 792 F.3d at 413 (citing 12 U.S.C. § 2605(i)(3)). Thus, ***correspondence limited to the dispute of contractual issues that do not relate to the servicing of the loan, such as loan modification applications, do not qualify as QWRs***. ***A loan modification is a contractual issue, not a servicing matter***.

*Id.* at 650–51 (emphasis added). Like loss mitigation and loan modifications, a loan assumption relates to the contractual relationship between Plaintiff and her creditor, *Gibbs*, 2017 WL 11001709, at *1, which, under Fourth Circuit law, is not a servicing matter. *Morgan*, 26 F.4th at 651. Shellpoint was under no obligation to respond to Plaintiffs' loan assumption related NOE.

***ii. Plaintiffs' NOE was substantially similar to their prior inquiries, and Shellpoint responded appropriately.***

Plaintiffs contend that Shellpoint's February 7, 2024 response to their January 30, 2024 NOE did not comply with 12 C.F.R. § 1024.36(f)(2). This is incorrect. 12 C.F.R. § 1024.36(f)(2) provides:

> If a servicer determines that, pursuant to this paragraph (f), the servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section, the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination. The notice to the borrower shall set forth the basis under paragraph (f)(1) of this section upon which the servicer has made such determination.

As previously stated, Plaintiffs' NOE was duplicative of previous requests they had sent to Shellpoint. ECF 9-1 at 7. A servicer is not required to comply with the response and investigation requirements of RESPA and Regulation X if the servicer reasonably determines that the information requested is substantially the same as information previously requested by the borrower for which the servicer has previously complied with its obligation to respond. 12 C.F.R. § 1024.36(f)(i). Accordingly, since Shellpoint determined that it was not required to comply with the requirements of paragraphs (c) and (d) because the NOE was duplicative and already responded to, all Shellpoint was required to do was notify the borrower in writing in five days setting forth that basis. It did precisely that. ECF 1-14. Shellpoint stated explicitly, "Shellpoint's records indicate we have previously received the same or a similar correspondence, and we have already responded. Since the correspondence did not provide any new or additional information for us to form the basis for a new investigation, our response remains the same." *Id.* Plaintiffs' contention that "[t]here is no allegation or exhibit attached to the Motion showing that Shellpoint sent correspondence pursuant to 12 C.F.R. § 1024.36(f)(2)" is patently false, and the claim should be dismissed.

For similar reasons, Plaintiffs' claim that Shellpoint failed to conduct a reasonable investigation in response to their asserted errors should be rejected as well. *See* ECF 18 at 17. It is clear from Shellpoint's lengthy January 11, 2024 response to RFI #2 and Plaintiffs' various Consumer Financial Protection Bureau ("CFPB") complaints that Shellpoint had thoroughly investigated Plaintiffs' claims and asserted errors, provided guidance and any information requested, and concluded that no error has occurred. ECF 1-12. When faced with Plaintiffs' subsequent January 30, 2024 NOE, Shellpoint's only obligation was to respond as it did on February 7, 2024 stating that no new information has been provided, and that its determination

remains the same. 12 C.F.R. § 1024.36(f)(i). There was no reason for Shellpoint to conduct an identical investigation in response to Plaintiffs' NOE that it had already conducted in response to Plaintiffs' prior RFIs and CFPB complaints.

**E. Plaintiffs still fail to allege a pattern or practice of Shellpoint's noncompliance with RESPA and Regulation X.**

Faced with authority stating that citing the CFPB database and attaching vague complaints from others is insufficient to establish a pattern or practice of noncompliance, *see Lynch v. Wells Fargo Bank, N.A.*, No. 18-23560-CIV, 2019 WL 13202780, at *17-18 (S.D. Fla. June 19, 2019); *Bennett v. Nationstar Mortg., LLC*, No. CV 15-001650KD-C, 2015 WL 5294321 at *12 (S.D. Ala. Sept. 8, 2015), Plaintiffs now pivot and argue that Shellpoint's repeated failures *in this matter* in responding to Plaintiffs' many requests, inquiries, and notices sufficiently alleges a pattern and practice of noncompliance. ECF 18 at 21. For the reasons stated above, none of the allegations of Shellpoint's misconduct are sufficient to adequately state an actionable RESPA or Regulation X violation, let alone constitute a pattern or practice of noncompliance. *Cf. Morgan v. Caliber Home Loans, Inc.*, No. 8:19-CV-02797-PX, 2024 WL 732028, at *5 (D. Md. Feb. 22, 2024) ("According to Morgan, Caliber's single AUD constitutes a pattern and practice because Caliber forwarded it three credit reporting agencies and violated multiple RESPA provisions. But the fact remains that Caliber submitted *one* AUD on *one* occasion. If this alone were sufficient to establish a pattern and practice, then the 'pattern and practice' requirement sufficient to trigger enhanced damages would apply in almost every case.") (internal citations omitted).

**II. PLAINTIFFS' MARYLAND CONSUMER PROTECTION ACT CLAIM SHOULD BE DISMISSED.**

Plaintiffs continue to claim they were deceived and suffered damages in reliance on Shellpoint's misrepresentations relating to the loan assumption process. In reality, none of

Shellpoint's statements were false, misleading, or deceptive, and most importantly, Plaintiffs suffered no damages in reliance on those alleged misrepresentations.

First, Plaintiffs continue to ignore the fact that Shellpoint repeatedly informed them that an assumption can be completed by bringing the loan current through sale proceeds, consistent with the VA Circular Guidelines and Handbook. ECF 1-6 ("If you are unable to bring the loan current with sale proceeds and would like to be review[ed] for an assumption with a loan modification, please contact our Loss Mitigation Department . . . ."); ECF 1-8 ("The second option provided was to bring the loan current with the sale proceeds and then the assumption could be completed . . . ."). Even if Shellpoint was misinformed that the potential sale fell through on November 8, 2023, it still clearly represented that using sale proceeds was an option, and thus, had the sale not actually fallen through as Plaintiffs now claim, Plaintiffs should have known that using sale proceeds to complete the assumption was still an option. They could have informed Shellpoint the sale was still on and that the loan would be brought current through cash at closing. Shellpoint's alleged misunderstanding of the status of the sale had no bearing on its willingness to allow Plaintiffs to use sale proceeds to bring the loan current and complete the assumption, nor did Shellpoint ever state such.

Second, Plaintiffs do not adequately plead that they relied upon Shellpoint's alleged misrepresentations, let alone suffered damages as a result of that reliance. Principally, Plaintiffs cannot disentangle the damages that they claim were caused by Shellpoint's alleged misconduct from their previously existing financial hardships. For example, Shellpoint's alleged misconduct had nothing to do with Plaintiffs not being able to make a single mortgage payment for a year prior to even beginning the loan assumption process, had nothing to do with Plaintiffs' two requests for

covid-related loan forbearance, and had nothing to do with Plaintiffs' decision to buy a home in Maryland and take on a mortgage debt, while already having a home in California.

Plaintiffs cannot plausibly allege that all of their alleged damages and hardship outlined in the Complaint (¶¶ 60-62) were caused by Shellpoint's alleged technical failures in responding to Plaintiffs' many requests and inquiries and alleged misrepresentations that were neither false or misleading and on which Plaintiffs did not rely. For instance, and to add some color to Plaintiffs' hyperbolic damages causation assessment, the opposition states that "Plaintiffs are still prohibited from selling the Property and satisfying their obligations on the Loan." However, a cursory search of public online databases revealed that Plaintiffs sold their home on June 26, 2024 – over a week before Plaintiffs' opposition to Shellpoint's Motion to Dismiss was filed. *See* **Exhibit 1**, June 26, 2024 Deed. Plaintiffs cannot tie their alleged damages to Shellpoint's conduct, and their MCPA claim should be dismissed.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.

[*Signature follows on the next page*]

Dated: August 12, 2024

Respectfully submitted,

*/s/ Melissa O. Martinez*

Melissa O. Martinez (Fed. Bar No. 28975)
Nicholas B. Jordan (Fed. Bar. No. 22067)
**MCGUIREWOODS LLP**
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
(410) 659-4400
(410) 659-4482 Fax
mmartinez@mcguirewoods.com
njordan@mcguirewoods.com

***Counsel for Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 12, 2024, a copy of the foregoing Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint, and Exhibit was electronically filed and served via the Court's CM/ECF system on all counsel of record.

*/s/ Melissa O. Martinez*
Melissa O. Martinez