### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| WILLIAM REID HOUCK, et al., | * |
| Plaintiff | * |
| v. | * Civ. No. MJM-24-1519 |
| NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

This matter is before the Court on the defendant's Motion to Dismiss. The Motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant the defendant's Motion to Dismiss.

### I.   BACKGROUND

On April 16, 2021, plaintiffs William "Reid" Houck and Vanessa Houck ("Plaintiffs") purchased a residential property in Prince Fredrick, Maryland (the "Maryland Property"), which they financed with a Veterans Affairs ("VA") mortgage loan (the "VA Loan"). *See* Complaint, ECF 4, ¶¶ 1–2. Plaintiffs are active duty and retired military servicemembers, respectively. *Id.* ¶ 23. In late 2023, Plaintiffs sought to sell the Maryland Property because "Mr. Houck was transferred to California and purchased a property there." *Id.* ¶ 25.

Due to financial hardship during the pandemic, Plaintiffs fell behind on their VA Loan payments. *Id*. Plaintiffs' VA Loan was in forbearance from August 2022 to April 2023 and then from September 2023 to October 2023. *Id*. Following the forbearance periods, payments on

1

Plaintiffs' VA Loan were past due from August 1, 2022, through November 1, 2023. *Id.* Throughout the forbearance period, Plaintiffs had been working with potential purchasers of the Maryland Property to assume the VA Loan, pursuant to VA guidelines, to relieve themselves of any further obligations. *Id*.

During the early steps of this process, defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), the mortgage servicer, informed Plaintiffs by email on June 1, 2023, and June 15, 2023, that it had evaluated the VA Loan for an assumption based on the eligibility requirements and determined that Plaintiffs were eligible to continue the assumption qualification process. *Id.* ¶ 26. Plaintiffs claim that they relied upon each of Shellpoint's representations in spending money to prepare for the sale of the Maryland Property and hiring a realtor to sell it. *Id.*

On or about May 22, 2023, the VA issued Circular 26-23-10 stating: "The servicer must . . . ensure the loan is current or will be made current at or before the close of the assumption. It is permissible for the loan to be brought current through cash at close." *Id.* ¶ 27. Further, the VA Servicer Handbook Chapter 5, § 6f states that for the VA servicer to approve the transfer of ownership of the home loan, "the loan must be current or will be brought current at the closing of the sales transaction." *Id.* ¶ 28. The foregoing standard servicer guidelines governed the VA Loan and allowed Plaintiffs to sell the Maryland Property and have the VA Loan assumed by another through payment at the time of settlement. *Id.* ¶¶ 27, 28. Plaintiffs allege that, notwithstanding the foregoing servicer guidelines, Shellpoint falsely represented to Plaintiffs that unless they remitted funds to fully cure any delinquency on the VA Loan before the assumption and closing of the sale transaction, they would not be able to proceed with the assumption process. *Id.* ¶ 29.

On November 17, 2023, Plaintiffs corresponded with Shellpoint after filing a complaint with the Consumer Financial Protection Bureau ("CFPB"). *Id.* ¶ 33. A Shellpoint representative

2

told Mr. Houck via email that Shellpoint could not approve an assumption "without a loan modification." *Id*. According to Plaintiffs, this statement was contrary to what the VA previously told Mr. Houck. *Id*. Plaintiffs submitted a second complaint to CFPB on or about December 14, 2023. *Id*. ¶¶ 47–48.

Between November 2023 and February 2024, Plaintiffs corresponded with Shellpoint numerous other times, sending two requests for information ("RFI") and one notice of error ("NOE"). *Id*. ¶¶ 31–55. In a RFI Plaintiffs sent on December 8, 2023 ("RFI #1), they requested a payoff statement, loan ownership information, and servicer information. *Id*. ¶¶ 38–39. On or about January 4, 2024, Plaintiffs sent another RFI ("RFI #2") to Shellpoint requesting a

> life of loan transaction history, servicing notes, broker price opinion (if any), a copy of the original note, the two most recent escrow analyses, reinstatement figures, dates of receipt of any incomplete loss mitigation packages, copies of correspondence sent to [Plaintiffs] since January 10, 2024, copies of any trial period payment plans, loan modification agreements, or loss mitigation agreements otherwise, whether temporary or permanent, that were offered to [Plaintiffs].

*Id*. ¶¶ 41–42. Shellpoint did not timely provide an accurate payoff statement for the VA Loan or any of the other requested information. *Id*. ¶¶ 44–46. Shellpoint responded to the two RFIs and the second CFPB complaint on or about January 11, 2024, but did not address Mr. Houck's complaint that he had received "conflicting and materially false information about the assumption process and conflict with VA servicing guidelines." *Id*. ¶¶ 49–50. Plaintiffs sent a NOE and another RFI to Shellpoint on or about January 30, 2023. *Id*. ¶ 51. The NOE pointed out, among other things, Shellpoint's alleged misrepresentations that Plaintiffs were required to make payments sufficient to cure the delinquency on the VA Loan before the assumption and closing. *Id*. ¶¶ 52–53, Ex. 11. Shellpoint did not address or correct the errors identified in the NOE. *Id*. ¶ 56.

Plaintiffs claim that because of the initial VA guidance, and the guidance received from Shellpoint, which they relied upon, they sustained financial damage, credit damage, and reputational harm, and incurred legal fees from the attempted sale of their property. *Id*. ¶¶ 61–62.

On or about April 22, 2024, Plaintiffs filed a Complaint against Shellpoint in the Circuit Court of Anne Arundel County, Maryland. ECF 4. On May 24, 2024, Shellpoint filed a Notice of Removal to the United States District Court for the District of Maryland. ECF 1. On June 10, 2024, Shellpoint filed a motion to dismiss the Complaint for failure to state a claim or, alternatively, for summary judgment. ECF 9. On July 8, 2024, Plaintiffs filed a response to Shellpoint's motion. ECF 18. On August 12, 2024, Shellpoint filed a reply. ECF 19.

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

4

the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may consider matters outside the pleadings attached to a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* The Fourth Circuit "has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery." *Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278, at *4 (D. Md. Mar. 28, 2022) (citing *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)). "[W]here the parties have not had an opportunity for reasonable discovery," summary judgment is inappropriate. *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The party opposing conversion may file a declaration pursuant to Rule 56(d) explaining the reasons why "it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002).

### III.   ANALYSIS

#### A. Violations of RESPA and Regulation X (Count I)

In Count I of the Complaint, Plaintiffs allege violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., and its implementing regulations, 12 C.F.R. §§ 1024.1 to 1024.41 (known as "Regulation X"). Compl. ¶¶ 67–86.

RESPA requires servicers of "federally related mortgage loan[s]" to respond to inquiries from borrowers. If a servicer receives a "qualified written request" ("QWR") from a borrower or his agent "for information relating to the servicing of [the] loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 [business] days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). A response period of ten business days applies to "an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan[.]" 12 C.F.R. § 1024.36(d)(2)(i)(A); *see also* 12 U.S.C. § 2605(k)(1)(D). For all other information requests, the servicer is required, within 30 days, to provide the borrower with either the information requested or, after conducting a reasonable search, written notification that the servicer has determined that the requested information is not available to the servicer, while providing a basis for that determination. 12 C.F.R. § 1024.36(d). "Upon receipt of a notice of a covered error, a servicer must investigate the borrower's assertions and provide a response within the specified time, which depends upon the nature of the alleged error." *Nash v. PNC Bank, N.A.*, Civ. No. TDC-16-2910, 2017 WL 142317 at *6 (D. Md. Apr. 20, 2017) (citing 12 C.F.R. § 1024.35(e)). "[C]overed errors" include errors "relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11).

"A servicer's failure to comply with its RESPA obligations allows a borrower to recover any 'actual damages . . . as a result of the failure' and 'any additional damages,' not to exceed $2,000, if there is 'a pattern or practice of noncompliance' with RESPA." *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 982 (11th Cir. 2017) (quoting 12 U.S.C. § 2605(f)(1)). "Damages are an essential element of a RESPA claim." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1011 (11th Cir. 2016). Furthermore, "[a] borrower cannot recover 'additional' damages under § 2605(f)(1)(B) without first recovering actual damages." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 719–20 (8th Cir. 2018); *see also Akkus v. Rocket Mortg., LLC*, 715 F. Supp. 3d 726, 734 (D. Md. 2024) ("[I]f a plaintiff fails to show actual damages, she likewise may not claim statutory damages for any alleged pattern or practice of noncompliance."). "Thus, to prevail on a RESPA claim, a plaintiff must show (1) a failure to comply with a RESPA obligation and (2) actual damages sustained as a result of the failure to comply." *Baez*, 709 F. App'x at 982 (citing *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016)).

Importantly, "actual damages" recoverable under 12 U.S.C. § 2605(f)(1)(A) must be "a result of" the servicer's noncompliance. 12 U.S.C. § 2605(f)(1)(A); see also <u>Akkus</u>, 715 F. Supp. 3d at 734 ("Actual damages must arise as a result of the alleged violation."). In other words, there must be, at minimum, "a causal link between the [servicer's] noncompliance and [the borrower's] damages." *Baez*, 709 F. App'x at 982; *see also Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 271 (D. Conn. 2017) ("[A] plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA.").

  1. **Requests for Information #1 and #2**

On or about December 8, 2023, Plaintiffs sent RFI #1 to Shellpoint requesting a payoff statement, loan ownership information, and servicer information. Compl. ¶¶ 38–39. On or about

7

January 4, 2024, Plaintiffs sent RFI #2 requesting a "life of loan transaction history, servicing notes, broker price opinion (if any), a copy of the original note, the two most recent escrow analyses, reinstatement figures, dates of receipt of any incomplete loss mitigation packages, copies of correspondence sent to [Plaintiffs] since January 10, 2024, copies of any trial period payment plans, loan modification agreements, or loss mitigation agreements otherwise, whether temporary or permanent, that were offered to [Plaintiffs]." *Id*. ¶¶ 41–42. According to the Complaint, Shellpoint failed to acknowledge receipt of RFI #1 within the five days as required[1] and failed to provide a timely substantive response to RFI #1 altogether. *Id*. ¶¶ 44, 46.[2] Plaintiffs allege that Shellpoint provided a response to RFI #1 and RFI #2 on January 11, 2024, but that response was inadequate. *Id*. ¶ 49. Even assuming that this response was inadequate and, as to RFI #1, untimely, Plaintiffs RESPA claims based on RFI #1 and RFI #2 fail because the Complaint does not allege any actual damages arising from Shellpoint's noncompliance.

The only actual damages specified in connection with these RFIs are "attorney's fees and costs associated with the preparation of the RFIs and NOEs to metamorphose into damages." Compl. ¶ 83. But "the cost of sending an initial request for information is not a cost to the borrower 'as a result of the failure' to comply with a RESPA obligation." *Baez*, 709 F. App'x at 983 (citing 12 U.S.C. § 2605(f)(1)(A)); *see also Akkus*, 715 F. Supp. 3d at 734–35 ("[C]ourts in the Fourth Circuit have rejected actual damages claims for voluntary postage costs and attorneys'

---

[1] Shellpoint contends that it timely acknowledged receipt of RFA #1 and has produced a copy of that letter. Def. Mem., ECF 9-1, at 10; Def. Ex. 2, ECF 9-3. Plaintiffs contest the letter's authenticity. Pl. Opp'n, ECF 18, at 8–9. The Court cannot consider the letter on a Rule 12(b)(6) motion to dismiss.

[2] Plaintiffs further allege that Shellpoint failed to provide the accurate payoff statement requested in RFI #1 within seven days, which is the response time imposed under 12 C.F.R. § 1026.36. Compl. ¶ 45. But § 1026.36 is a Truth in Lending regulation, and Plaintiffs here do not assert any claims for relief under the Truth in Lending Act. Under Regulation X, [a] request for a payoff balance need not be treated by the servicer as a request for information." 12 C.F.R. § 1024.36(a).

fees associated with sending QWRs and follow-up letters.") (citing *Fox v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 311 (D. Md. 2022)); *Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) ("[C]osts incurred while preparing a qualified written request for information from a servicer cannot serve as a basis for damages because, at the time those expenses are incurred, there has been no RESPA violation.") (citation omitted); *Steele v. Quantum Serv. Corp.,* 12–CV–2897, 2013 WL 3196544 (N.D.Tex. June 25, 2013) (same). While "[c]osts incurred *after* an incomplete or insufficient response are recoverable under RESPA," the same cannot be said of "costs incurred *before* the violation occurred, such as the expenses of preparing an initial request for information[.]" *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 271 (D. Conn. 2017) (emphasis added) (citation omitted). Expenses incurred *before* a violation "cannot serve as the basis for actual damages." *Id.* Here, Plaintiffs incurred attorney's fees and costs associated with preparing the RFIs before any noncompliance by Shellpoint and therefore incurred those expenses whether Shellpoint complied with its obligations to respond or not. And "[a] cost that is incurred whether or not the servicer complies with its obligations is not a cost that is caused by, or 'a result of,' the failure to comply." *Id.* (citation and footnote omitted).

Because Plaintiffs offer no plausible claim for actual damages associated with RFI #1 and RFI #2, they cannot state a plausible claim for statutory damages. *See Akkus*, 715 F. Supp. 3d at 735 ("Plaintiffs have failed to show actual damages, and without actual damages, they cannot recover statutory damages."); *Wirtz*, 886 F.3d at 719–20. Plaintiffs' RESPA claims premised on these requests for information must be dismissed. *See Fox*, 629 F. Supp. 3d at 310 (""[A]llegations that a servicer breached a duty under RESPA without causing any actual harm fails to state a claim under the statute.").

### 2. Notice of Error

According to the Complaint, Plaintiffs sent a NOE and another RFI to Shellpoint on or about January 30, 2024. Compl. ¶ 51;[3] Compl. Ex. 11, ECF 1-13. According to the NOE, Shellpoint misrepresented to Plaintiffs that they could not "proceed with the loan assumption process unless they remitted funds to fully cure any delinquency on the Loan prior to the assumption and the close of the sale transaction." *Id*. ¶¶ 52–53. Plaintiffs stated in the NOE that "the assumption of the loan" was "delayed" as a result of Shellpoint's error. Compl. Ex. 11, ECF 1-13, at 1–2. In the Complaint, Plaintiffs allege that Shellpoint responded to the NOE on February 7, 2024, but did not address or correct the errors identified in the NOE. Compl. ¶¶ 55–57.

A "covered error" under Regulation X is one "relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b). "Regulation X applies only to information related to the servicing of the loan." *Suarez v. Nationstar Mortg. LLC*, Civ. No. 23-20114, 2023 WL 7505266, at *12 (S.D. Fla. May 19, 2023) (citation omitted). Servicing of a loan "is limited to 'the receiving or making of loan payments' and is not related to 'the terms of the loan and mortgage documents.'" *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 650–51 (4th Cir. 2022) (quoting *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015)).

With guidance from *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661 (9th Cir. 2012), the Fourth Circuit in *Morgan* recognized a distinction between correspondence from borrowers that "relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other." *Morgan*, 26 F.4th at 650–51. Correspondence "limited to . . . contractual issues that do not relate to the servicing of the loan . . . do not qualify as QWRs." *Id*. at 651. The Fourth Circuit deemed "[a] loan modification[,]" for

---

[3] Paragraph 51 of the Complaint states that the NOE was sent on January 30, *2023*, but that appears to an error. *See* Compl. Ex. 11, ECF 1-13 (NOE dated January 30, *2024*).

10

instance, "a contractual issue, not a servicing matter[,]" and therefore not subject to RESPA's protections. *Id*. The district court in *Gibbs v. Ocwen Loan Servicing, LLC* recognized the same distinction with respect to loan assumption. No. 1:16-CV-1459-ODE-LTW, 2017 WL 11001709, at *8 (N.D. Ga. July 26, 2017), *report and recommendation adopted*, No. 1:16-CV-1459-0DE-LTW, 2017 WL 11001708 (N.D. Ga. Aug. 23, 2017). In that case, the court found that a borrower's requests concerning a loan assumption process were not entitled to RESPA protections and dismissed the borrower's RESPA claim premised on these requests, reasoning as follows:

> Although loan modification documents, foreclosure documents, forbearance documents, and bankruptcy documents likely were created during [defendant's] tenure as servicer of the loan, Plaintiff's requests for such documents do not relate to the servicing of her loan. . . . Plaintiff's requests do not raise any questions as to the receiving and application of payments on the loans. Instead, the documents Plaintiff requested are connected to the contractual relationship between Plaintiff and her creditor and whether she should still be obligated under the loan. . . . For the same reasons, Plaintiff's various emailed requests for updates on the loan assumption process did not relate to the servicing of the loan as defined by RESPA. The loan assumption process relates to attempts to alter the alleged contractual relationship between Plaintiff and her creditor and not accepting and applying scheduled payments under the terms of the loan.

*Id*.

The deficiency Plaintiffs allege in Shellpoint's response to the NOE is not actionable because it is not related to loan servicing, but rather loan assumption, and, therefore, it is not a "covered error" under Regulation X. Plaintiff's claim of misinformation by Shellpoint in the NOE and their allegation here of Shellpoint's inadequate response to notice of that error concern a "a contractual issue, not a servicing matter." *Morgan*, 26 F.4th at 651; *see also Gibbs*, 2017 WL 11001709, at *8 ("The loan assumption process relates to attempts to alter the alleged contractual relationship between Plaintiff and her creditor and not accepting and applying scheduled payments under the terms of the loan."). Therefore, Plaintiffs fail to state a plausible RESPA claim based on the NOE of January 30, 2024. This claim shall be dismissed.

### 3. Pattern or Practice of Noncompliance

In addition to any actual damages, Plaintiffs seek statutory damages for what they allege to have been a pattern and practice of RESPA and Regulation X violations by Shellpoint. Compl. ¶¶ 63–66, 84–85.

As noted above, after establishing actual damages from a servicer's noncompliance with its RESPA obligations, a borrower may seek "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance . . . , in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(B). "To show a pattern or practice, a plaintiff must show that noncompliance with the statute 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Wirtz*, 886 F.3d at 720 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.16 (1977)).

Here, Plaintiffs allege that "consumers nationwide have lodged" thousands of complaints with the CFPB against Shellpoint, and they attach a number of these complaints to the Complaint filed in this case. Compl. ¶¶ 64–65, Ex. 14, ECF 1-6. Plaintiffs further note that Shellpoint has previously been sued for RESPA violations. *Id.* ¶ 65. The Court finds these generic allegations insufficient to plead a plausible pattern or practice of noncompliance by Shellpoint. Plaintiffs' allegations fall short of the factual detail necessary to indicate that noncompliance was Shellpoint's "standard operating procedure" or regular practice. *Wirtz*, 886 F.3d at 720. *See also Lynch v. Wells Fargo Bank, N.A.*, No. 18-23560-CIV, 2019 WL 13202780, at *18 (S.D. Fla. June 19, 2019) ("Plaintiff's threadbare allegations merely recite outstanding consumer complaints lodged against Defendant on a myriad of issues, without identifying in any particularity the violations of RESPA or Regulation X at issue. Such allegations do not satisfy the requirements of *Twombly*.").

Plaintiffs' pattern-or-practice claim shall be dismissed.

### B. Violations of the Maryland Consumer Protection Act (Count II)

Count II of the Complaint asserts a claim against Shellpoint for a violation of the Maryland Consumer Protection Act. Compl ¶¶ 87–94. Plaintiffs allege that "Shellpoint's acts and omissions . . . constitute[] unfair and deceptive trade practices in violation of Com. Law §§ 13-301(1) and (3) and Com. Law §§ 13-303(1) and (4)." Compl. ¶ 91. Plaintiffs describe Shellpoint's correspondence with them as "unreasonable, unfair, abusive and deceptive." *Id.* ¶ 92.

The MCPA "prohibits commercial entities from engaging in any 'unfair or deceptive trade practice' in '[t]he extension of consumer credit.'" *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 531 (D. Md. 2011) (quoting Md. Code Ann., Com. Law § 13-303). An "unfair or deceptive trade practice" under the MCPA includes "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* at 531–32 (quoting Md. Code Ann., Com. Law § 13-301). A consumer "may bring an action to recover for injury or loss sustained by him as the result of" an unfair or deceptive trade practice forbidden by the MCPA. Md. Code Ann., Com. Law § 13-408(a). To prevail on such a claim, the plaintiff "must establish 'actual injury or loss'" that is "objectively identifiable." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007) (quoting *Citaramanis v. Hallowell*, 613 A.2d 964, 969 (Md. 1992)). Further, the plaintiff "must prove that they relied on the misrepresentation in question . . . ." *Bank of America*, 822 F. Supp. 2d at 532 (citing *Philip Morris Inc. v. Angeletti,* 358 Md. 689, 752 A.2d 200, 235 (2000)). "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Id.*

Here, Plaintiffs allege that Shellpoint's misrepresentations included "falsely claiming" that Plaintiffs could not proceed with the loan assumption process without first remitting funds to cure

13

any delinquency on the VA Loan before closing, "falsely claiming that Shellpoint could not approve an assumption without a loan modification" and "requesting incorrect forms or forms from the incorrect party . . . ." Compl. ¶ 91. Plaintiffs go on the allege, in conclusory fashion, that they "reasonably relied upon" Shellpoint's acts and omissions, *id.* ¶ 92, without offering any explanation how. The brief in opposition to Shellpoint's motion is equally vague. Pl. Opp'n at 24.

If anything, the specific facts alleged in the Complaint suggest that Plaintiffs *did not* rely upon Shellpoint's alleged misrepresentations about the loan assumption process. In response to Shellpoint's alleged misrepresentations, Plaintiffs submitted a NOE characterizing Shellpoint's statements as error. Compl. Ex. 11, ECF 1-13. In the NOE, Plaintiffs state that Shellpoint "falsely claim[ed]" that Plaintiffs were "unable to proceed with the assumption process[.]" *Id.* at 2. Without establishing reasonable reliance on any alleged misinformation they received from Shellpoint, Plaintiffs cannot plausibly allege damages. Plaintiffs fail to draw a plausible causal connection between Shellpoint's alleged misrepresentations and the damages outlined in the Complaint.

Accordingly, Count II of the Complaint must be dismissed.

## C. CONCLUSION

For the foregoing reasons, Shellpoint's Motion to Dismiss is GRANTED. The Complaint is dismissed without prejudice.

A separate Order has issued.

DATE: 4/2/25

_____
Matthew J. Maddox
United States District Judge